J HS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

Makitas Jolly

_(In the space above enter the full name(s) of the plaintiff(s).)_

19      2208

- against -

Vermont Board of
Nursing

New Jersey Board
of Nursing

Excelsior College

**COMPLAINT**

Jury Trial: ☑ Yes   ☐ No

(check one)

_(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)_

**I.    Parties in this complaint:**

A.    List your name, address and telephone number.  If you are presently in custody, include your identification
number and the name and address of your current place of confinement.  Do the same for any additional
plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff        Name                    Makota Jolly
                 Street Address          42 Kingston St.
                 County, City            Crofton, PA
                 State & Zip Code        19074
                 Telephone Number        610 334 4375

_Rev. 10/2009_

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights



# UNITED STATES DISTRICT COURT

for the

Eastern  District of Pennsylvania

Maketa S. Jolly Prose

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **19   2208**

*(to be filled in by the Clerk's Office)*

_____
Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

State of Vermont/Board of nursing

_____
Defendant(s)
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.  Do not include addresses here.)*

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

The Clerk will not file a civil complaint unless the person seeking relief pays the entire filing fee (currently $350) and an administrative fee (currently $50) in advance, or the person applies for and is granted in forma pauperis status pursuant to 28 U.S.C. § 1915.  A prisoner who seeks to proceed in forma pauperis must submit to the Clerk (1) a completed affidavit of poverty and (2) a copy of the trust fund account statement for the prisoner for the six month period immediately preceding the filing of the complaint, obtained from and certified as correct by the appropriate official of each prison at which the prisoner is or was confined for the preceding six months.  See 28 U.S.C. § 1915(a)(2).

If the Judge enters an order granting a prisoner's application to proceed in forma pauperis, then the order will assess the filing fee (currently $350) against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct an initial partial filing fee equal to 20% of the greater of the average monthly deposits to the prison account or the average monthly balance in the prison account for the six-month period immediately preceding the filing of the complaint, as well as monthly installment payments equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00, until the entire filing fee has been paid.  See 28 U.S.C. § 1915(b). **A prisoner who is granted leave to proceed in forma pauperis is obligated to pay the entire filing fee regardless of the outcome of the proceeding, and is not entitled to the return of any payments made toward the fee.**

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Maketa S Jolly |
| All other names by which you have been known: | |
| ID Number | |
| Current Institution | |
| Address | A2 Kingston Terr |
| | Aston   PA   19014 |
| | *City*   *State*   *Zip Code* |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

| Defendant No. 1 | |
|---|---|
| Name | State of Vermont |
| Job or Title *(if known)* | Board of nursing |
| Shield Number | Phyllis Mitchell |
| Employer | 89 Main Street 3rd flr |
| Address | Montpelier, VT 05620 |
| | *City*   *State*   *Zip Code* |

☐ Individual capacity   ☒ Official capacity

| Defendant No. 2 | |
|---|---|
| Name | State of New Jersey |
| Job or Title *(if known)* | Board of nursing |
| Shield Number | Joanne Leone |
| Employer | 124 Halsey Street |
| Address | newark, NJ 07102 |
| | *City*   *State*   *Zip Code* |

☐ Individual capacity   ☒ Official capacity

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

Defendant No. 3
    Name               *Excelsior College*
    Job or Title *(if known)*  *Mary Lee Pollard Dean of nursing*
    Shield Number
    Employer           *7 Columbia Circle*
    Address            *Albany, NY 12203*

| | | |
|---|---|---|
| City | State | Zip Code |

☐ Individual capacity   ☑ Official capacity

Defendant No. 4
    Name
    Job or Title *(if known)*
    Shield Number
    Employer
    Address

| | | |
|---|---|---|
| City | State | Zip Code |

☐ Individual capacity   ☐ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

    ☐ Federal officials (a *Bivens* claim)

    ☑ State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

*due process, 1st, 4th amendment, ferpa title 18USC Section 245, 18 USC section 242 color of law,*

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

*yes; 4th, 14th 1st amendment's and civil Rights, federal disclosures*

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

D.     Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

Ms. Jolly is a professional nurse and teacher. On or about March 2018. Ms. Jolly applied for RN-NCLEX by examination; however, Vermont did not accept transcripts and violated their own admin Rules. conspired c̄ NJ Board & Excelsior college

**III.    Prisoner Status**

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐    Pretrial detainee

☐    Civilly committed detainee

☐    Immigration detainee

☐    Convicted and sentenced state prisoner          N/A

☐    Convicted and sentenced federal prisoner

☐    Other *(explain)*  _____

**IV.    Statement of Claim**

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.     If the events giving rise to your claim arose outside an institution, describe where and when they arose.

— NJ-Board → Published and punished Ms. Jolly 5/6 months after Licensure return; in what is believed on behalf of Ex albion college (Excelsior)
→ Mary Lee Poued → Publish Sensitive client-attorney info

B.     If the events giving rise to your claim arose in an institution, describe where and when they arose.

→ Vermont Board of Nursing
→ New Jersey Board of Nursing
→ Excelsior College

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

C.    What date and approximate time did the events giving rise to your claim(s) occur?

Began 2014 -
        remain ongoing → defamed Plaintiff Secondary to
recently → 2018/2019 →                          Class-Action
                                              lawsuit. Caselaw
                                                    Exaction

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what?*
      *Was anyone else involved? Who else saw what happened?)*

• Published- Attorney-Client information
• Released to personal documentation for publishing
on world wide web
• Falsified record to include documents for
6 author 6 mo. after license return.

V.    **Injuries**    • defamed Ms. Kelly telling hoards/mailing letters
                                                                      misrep-
If you sustained injuries related to the events alleged above, describe your injuries and state what medical    sentation
treatment, if any, you required and did or did not receive.

• anxiety
• emotional distress
• public image tarnished
• heart palpitations

VI.   **Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes.
If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for
the acts alleged.  Explain the basis for these claims.

Relief sought ,   1 million Actual damage
                  6 million punitive damages
          100,000 Prima facie.
Declarative/injunctions - Preliminary/ permanent
                                                    injunctions

## VII.    Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☐ Yes

☑ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

---

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☐ Yes

☑ No

☐ Do not know

C.    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes

☑ No

☐ Do not know

If yes, which claim(s)?

---

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☑ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☑ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

n/A

2.    What did you claim in your grievance?

n/A

3.    What was the result, if any?

n/A

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Sent NJ Board/ Atty General Governor request for relief & β response Vermont - Sent letters to Dept of State; Vermont Governor

F.   If you did not file a grievance:

   1.   If there are any reasons why you did not file a grievance, state them here:

*N/A*

   2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

*Yes, See Letters to NY ADA; Vermont Gov; VT Dept of State. See Direct/misleone*

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*• Seal information provided to NY Dist. Court. Dist Div*
*• Immediate relly and                      NO·KY*
*  ongoing financial resolution  Castellaw, Excelsior.*

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

*N/A*

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☑ Yes   _S Castellaw v. Excelsior Colleg Judge Mann._
☑ No      _US District Court_
            _ny-ny_

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit
     Plaintiff(s)  _Excelsior College Castellaw v. Excelsior_
                                                    _College_
     Defendant(s)  _Excelsior College_

2.   Court *(if federal court, name the district; if state court, name the county and State)*
     _U.S. District Court Dist. NY, NY Judge Mann_

3.   Docket or index number
     _1:14-cv-01048_

4.   Name of Judge assigned to your case
     _Judge Mann_

5.   Approximate date of filing lawsuit
     _2015 & 2018_

6.   Is the case still pending?
     ☑ Yes _error_
     ☑ No
                                                    _1/2019_
     If no, give the approximate date of disposition.

7.   What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*
     _Judgment for Class-action_

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?
     _N/A_

E.D.Pa. AO Pro Se 14 ( Rev. 04/18) Complaint for Violation of Civil Rights

☐ Yes

☑ No

D.   If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit N/A
     Plaintiff(s)
     Defendant(s) _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

     N/A
     _____

3.   Docket or index number
     _____

4.   Name of Judge assigned to your case
     _____

5.   Approximate date of filing lawsuit
     _____

6.   Is the case still pending?

     ☐ Yes

     ☑ No

     If no, give the approximate date of disposition _____

7.   What was the result of the case? *(For example: Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

     N/A
     _____

## IX.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      5/20/2019

Signature of Plaintiff

Printed Name of Plaintiff       Matthew Spl22y

Prison Identification #

Prison Address

|            | City | State | Zip Code |
| ---------- | ---- | ----- | -------- |

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|            | City | State | Zip Code |
| ---------- | ---- | ----- | -------- |

Telephone Number

E-mail Address

# IN AND FOR THE UNITED STATES DISTRICT

## EASTERN DISTRICT OF PENNSYLVANIA

MAKETA S JOLLY;  Plaintiff

     Pro Se

          v.

STATE OF VERMONT; Defendants

STATE OF NEW JERSEY Defendants

EXCELSIOR COLLEGE Defendants

**COMPLAINT**

DOCKET NO.

PLAINTIFF DEMANDS TRIAL BY JURY

Plaintiff respectfully allege as follows: Breach of Information; Breach of Privacy; Civil Rights Violation; Due Process; Violation of Disclosure Acts; Defamation, Slander and Libel and Privacy Act 1974 H.R 387 Email Privacy Act; Title VII Protected Class

## PROCEDURAL RULES AND FINDINGS

# I

Pursuant to 18 U.S. Code § 1905: U.S.C. § 552a; 14th Amendment; VT Title 9;  9 V.S.A. § 2430 2433, 2446 and 2447. H.R.4081; Act (15 U.S. Code 41 et seq.) U.S. Code: Title 15;18 U.S. Code § 1028(7)(d)   18 U.S. Code CHAPTER 73;   28 U.S.C. § 4101;  Section 241 of Title 18;31 U.S. Code § 6711(3)(b); 22 CFR § 505.10(c) 18 U.S.C. § 1594(b) and ©;  42 USC §1983 4th amendment 18 U.S.C. §§ 2701-12

The Privacy Act of 1974, 5 U.S.C. § 552a, establishes a code of fair information practices that governs the collection, maintenance, use, and dissemination of information about individuals that is maintained in systems of records by federal agencies. A system of records is a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual.

The Privacy Act prohibits the disclosure of a record about an individual from a system of records absent the written consent of the individual, unless the disclosure is pursuant to one of twelve statutory exceptions. The Act also provides individuals with a means by which to seek access to and amendment of their records, and sets forth various agency record-keeping requirements.

Pursuant to 18 U.S. Code § 241 Conspiracy against rights; If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State,Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same.

Pursuant to 14th Amendment;  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State

deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

5 U.S.C. § 552a PRIVACY ACT: Protection of Personal Information:  Personally identifiable information" means an individual's first name or first initial and last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted or protected by another method that renders them unreadable or unusable by unauthorized persons; "Data collector" may include the State, State agencies, political subdivisions of the State, public and private universities, privately and publicly held corporations, limited liability companies, financial institutions, retail operators, and any other entity that, for any purpose, whether by automated collection or otherwise, handles, collects, disseminates, or otherwise deals with nonpublic personal information.

"Security breach" means unauthorized acquisition of electronic data or a reasonable belief of an unauthorized acquisition of electronic data that compromises the security, confidentiality, or integrity of a consumer's personally identifiable information maintained by the data collector.

"Security breach" does not include good faith but unauthorized acquisition of personally identifiable information by an employee or agent of the data collector for a legitimate purpose of the data collector, provided that the personally identifiable information is not

used for a purpose unrelated to the data collector's business or subject to further unauthorized disclosure.

"Notice of the breach shall be made in the most expedient time possible and without unreasonable delay, but not later than 45 days after the discovery or notification, consistent with the legitimate needs of the law enforcement agency, as provided in [§§2435(b)(3) and (4)], or with any measures necessary to determine the scope of the security breach and restore the reasonable integrity, security, and confidentiality of the data system." (§2435(b)(1)). For purposes of this subsection, notice to consumers may be provided by one of the following methods: (A) Direct notice to consumers, which may be by one of the following methods: (i) Written notice mailed to the consumer's residence; (ii) Electronic notice, for those consumers for whom the data collector has a valid e-mail address if: (I) the data collector does not have contact information set forth in subdivisions (i) and (iii) of [§2435(b)(6)], the data collector's primary method of communication with the consumer is by electronic means,

**Consumer Privacy Protection Act of 2017**  To ensure the privacy and security of sensitive personal information, to prevent and mitigate identity theft, to provide notice of security breaches involving sensitive personal information, and to enhance law enforcement assistance and other protections against security breaches, fraudulent access, and misuse of personal information.

Misuse of sensitive personally identifiable information has the potential to cause serious or irreparable harm to an individual's livelihood, privacy, and liberty and undermine efficient and effective business and government operations. Identity theft is a serious threat to the Nation's economic stability, national security, homeland security, cybersecurity, the development of e-commerce, and the privacy rights of Americans. Individuals whose personal information has been compromised or who have been victims of identity theft should receive the necessary information and assistance to mitigate any potential damage. On or about the 1990's Ms. Jolly fell prey to identity theft. Plaintiff sustained numerous injuries which impaired her credit abilities. Having spent numerous dollars to repair her credit, she now finds herself facing the same situation. To date, the plaintiff remains with an extended fraud alert on her credit profile. The egregious actions of Vt Board of Nursing threatens her financial potential until retirement.

## DEFAMATION

The term "defamation" means any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person

Defendants alleged  "acts" defamed, libel and slandered  the plaintiff's reputation *Per Se* causing undue distress denying access to education, examination further impeding plaintiffs constitutional rights.

## CONSPIRACY AGAINST RIGHTS

Section 241 of Title 18 i civil rights conspiracy statute. Section 241 makes it unlawful for two or more persons to agree together to injure, threaten, or intimidate a person in any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States, (or because of his/her having exercised the same). Unlike most conspiracy statutes, Section 241 does not require that one of the conspirators commit an overt act prior to the conspiracy becoming a crime.

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same.

## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of

the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts.

## Prohibited discrimination

No person in the United States shall be excluded from participating in, be denied the benefits of, or be subject to discrimination under, a program or activity of a unit of general local government because of race, color, national origin, or sex if the government receives a payment under this chapter.

The following prohibitions and exemptions also apply to a program or activity of a unit of general local government if the government receives a payment under this chapter:

## § 505.10 Disclosure to third parties.

We will not disclose any information about you to any person or another agency without your prior consent, except as provided.

**FOURTEENTH AMENDMENT**

The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law." Claims under this provision have been a staple of Section 1983 legal services practice for many years. Procedural due process addresses the right to notice and hearing before (or after) particular deprivations can take place. Substantive due process concerns governmental deprivations of life, liberty, or property stemming from particularly outrageous governmental actions.

## CONSTITUTIONAL RIGHTS VIOLATIONS

United States law allows an individual who believes that his or her constitutional rights have been violated to bring a civil action against the government to recover the damages sustained as a result of that violation. "*provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws by any person acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.*" *Gomez v Toledo*, 446 US 635, 638 (1980)(internal quotations omitted).

In other words, the defendants who deprived the Plaintiff of the right must have been acting for or on behalf of a governmental entity at the time the right was denied. However, an agent of the government who is abusing his position or the power conferred upon him is still acting under the "color of law" and is thus subject to §1983 actions. *Monroe v Pape*, 365 US 167, 172 (1960).  There is no constitutional violation if the individual who denied the Plaintiff's right was a private citizen, unless that individual was working in conjunction with a governmental entity.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1332, diversity of citizenship, the plaintiff seeks 3 million dollars in assumed damages and cost(s), and 4 million in punitive damages inclusive of interest and attorneys costs.

Plaintiff brings this action pursuant to 42 U.S.C. §1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

The case presents a federal question within this Court's jurisdiction under Article III, § 2 of the United States Constitution and 28 U.S.C. §§ 1331 and 1343. section 1985 of Title 42

Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

Venue is proper in this Court under 28 U.S.C. § 1391 because the injured party resides in this District, and a substantial part of the events giving rise to this claim occurred in this District.

# II

## PROCEDURAL HISTORY

Alternative Program Part 11 Vermont Administrative Rules: Nurses and Nursing Assistants: 11.1 Alternative Program Created (a) As authorized by 26 V.S.A. § 1574(9) the Board has created "The Alternative Program" ("the Program") for licensees and applicants eligible for licensure.

(d) Participation in the Alternative Program is not a right of a licensee or applicant. The Board, in its sole discretion, determines whether an individual is an acceptable candidate. 11.2 Administration The Alternative Program is administered by a committee appointed by the Board. (a) The committee and Executive Director, in their sole discretion, determine whether an individual is an appropriate candidate for participation in the program. They review pertinent reports and information, and impose and monitor conditions as appropriate. (b) As needed and subject to Board approval, the committee may adopt or revise protocols for the operation and scope of the program.

Practice Remediation: Part 11.5 Eligibility: A candidate for participation in practice remediation must:  (1) **hold a license issued by the Board or be an eligible applicant for one;** (2) agree to participate in the Program; (3) agree to undergo a comprehensive assessment, at the applicant's expense, if requested, from a pre-approved qualified provider based on criteria determined by the committee (4) agree that a practice deficiency has occurred; and (5) not be ineligible for any of the reasons set forth in Rule 11.6 12.2 Confidentiality The Board follows the confidentiality provisions of 3 V.S.A. § 131.

Title 3 : Executive

Chapter 005 : Secretary Of State                    003 : Professional Regulation

Vermont Board of Nursing Administrative Rules effective: January 15, 2015

a) **It is the purpose of this section both to protect the reputation of licensees from public disclosure of unwarranted complaints against them,** and to fulfill the public's right to know

of any action taken against a licensee when that action is based on a determination of unprofessional conduct.

d) Neither the Secretary nor the Office shall make public any other information regarding unprofessional conduct complaints, investigations, proceedings, and related records except the information required to be released under this section.

(g) Nothing in this section shall prohibit the disclosure of any information regarding unprofessional conduct complaints, or investigations thereof, in response to an order from a court of competent jurisdiction, or to State or federal law enforcement or regulatory agencies, provided the receiving agency or department

Vermont Administrative Rules Part 6.6 **Licensure by Endorsement and Experience** The Board may issue a license to an applicant who: (b) has practiced nursing in that jurisdiction for a minimum of: (1) 50 days (400 hours) in the previous 2 years; or (2) 120 days (960 hours) in the previous 5 years.

(c) If there is a question about the applicant's education or practice of nursing, the Board may require the applicant to provide **a job description** or other evidence of the **required qualifications and expected job responsibilities.** The job description shall be certified as true by employers or other appropriate persons.

Vermont Administrative Rules 6.7 Exemption **A person holding an unencumbered license in another United States jurisdiction may practice nursing in Vermont under supervision of a Vermont unencumbered licensed RN as a part of an educational offering. Practice under this exemption shall not exceed 30 days in any calendar year.**

4.30 Registered Nursing Programs A registered nursing program shall include content in pharmacology and nutrition. Each program must provide no less than: (a) 180 theory hours and **400 clinical hours** covering the following: (1) Adult Nursing; (2) Maternal/Infant Nursing; (3) Pediatric Nursing; (4) Psychiatric/Mental Health Nursing. (b) 80 hours in Anatomy and Physiology; (c) 40 hours in Microbiology; (d) 80 hours covering both Humanities and Social/Behavioral Science.

4.9 Denial of Application If an application is denied, the Board will: (a) provide an explanation of its decision; and (b) advise the applicant of the right to file an appeal which is heard in a formal hearing by the Board. If the applicant does not appeal the **preliminary denial within 30 days,** the denial becomes final. (c) At the hearing the burden of proof is on the applicant to show that the denial was in error and that the applicant is entitled under the statutes and Rules to approval. (d) After that hearing the Board will issue a written final decision. If necessary, the decision will advise the applicant of how to file a further appeal.

Vermont Administrative Rules: 4.7 Review Process (a) The Board will review the application and determine whether further information is required. (b) Once the Board has formally

determined that an application is complete, it will notify the applicant when it will consider the application. (c) The Board will **advise the applicant in writing of its decision on the application.**

# III

## FACTS

Vermont Board of Nursing offers an "Alternative Program" for Nurses and Nursing Assistants.for licensees and applicants eligible for licensure. (1)Plaintiff is a professional African American woman residing in the State of Pennsylvania. (2) Plaintiff is a graduate of two community colleges and one university; pending graduate degree conferral  (3) Ms. Jolly has been a Licensed Practical Nurse for fifteen years; now licensed in three states.( Temple University, Philadelphia Pa;University of Pennsylvania and Kindred Hospitals. (4) Through and by legislation the Board of Nursing offers an Alternative Program  for licensure for licensees and eligible applicants.(5)Ms. Jolly applied for NCLEX-RN examination on March 5, 2018(6) (EXHIBIT C) College/University transcripts were provided, fees were paid; Transcript Order #31239588  Salem Community College 03/09/2018 8:44 PM Salem Community College (005461-00) At which time; VT online application for licensure by examination does not provide a default date for  potential candidates qualified for testing; Due to Vermont's

database technology applicants are required to enter a date; whereby it appears the applicant has acknowledged graduation. Albeit, there is not another online link or pathway for applicants to use for alternative programs.  (SEE EXHIBIT)

(7)Weds, March, 2018, 06:12 AM Ms. Jolly received an email from Michelle Lavoie, Licensing Administrator VT Board of Nursing; In which she informs plaintiff that the Board has received transcripts from Southern New Hampshire University. Again, the Board of Nursing emailed the plaintiff a notice of deficiency March 9, 2018. The language also included the following disclaimer "Applications which remain pending for more than six months may be purged. If an incomplete application is purged after six months, the applicant will be required to complete a new application" Enlight of no response, and the boards  disclaimer the plaintiffs application should have been purged September 2018.  (8) Weds, March, 2018 Michelle Lavoie emailed the plaintiff another copy of the the boards education verification form (EXHIBIT A).

 Ms. Jolly mailed the form for completion to  Rowan @ Gloucester County College(2015) and Excelsior College.(10)Rowan@ Gloucester County College completed Arts and Sciences (See Exhibits) while the  nursing theory was sent to Excelsior College for completion. (See Exhibits) In fact, Rowan provided Sciences and Humanities to include grades. Whereas, Excelsior forwarded a copy of the online RN Theory Program Curriculum analysis, attached with a correspondence stating the plaintiffs completion of RN Theory.  (13)July 10, 2018 plaintiff emailed Michelle Lavoie " " I hope all is well,. I just wanted to follow up with you to

ensure you received everything. Per Excelsior College you've received all the required documents" JULY 10, 2018 @ 9:24 AM. While she did not return my email, I continued to await a response via US regular mail. <michelle.lavoie@sec.state.vt.us>. (EXHIBIT B).

(14) Plaintiff drafted a letter on July 30, 2018 to Lauren Hibbert Director. (15) Per Board policies and Administrative Rules;, Ms. Jolly should have received a letter within 30 days of denial. VT Board of Nursing did not provide the plaintiff with the process for an appeal.Twelve months later, the plaintiff remains without the process to file for an appeal. 16) On or about August 2018; the plaintiff received a voicemail message from Gabriel Gilliam ESQ; Mr. Gilman is employed as Vermont's General Counsel. Mr Gilman's message to the plaintiff provided no appeal process, reasons or deterrents as to why the application wasn't accepted.

  Mr. Gilman's voicemail explained  his purpose for calling to include the following: Ms. Jolly I'm calling on the behalf of the Board of Nursing, I wanted to speak with you in regards to your application filed online for RN Licensure; The board has decided  not to move forward with your application. At which time, Mr. Gilliam did not provide appeal instructions, procedural safeguards, or policy deficiency(s) for the rejection. Finally alluding to the Board of Nursing does not believe you would be a qualified candidate. (17) Saddened, after hearing his message; I forwarded the information to class counsel for review; following,  I  turned to Senator Bernie Sanders office with my concerns.  In my opinion, the racially motivated denial of my application was apparent.  Although constituent services made every attempt to assist the plaintiffs concerns on behalf of Senator Sanders his staff  exclaimed the best they could do, would be to draft a letter of concern to Vermont Board of Nursing.

On or about February 2019, the plaintiff received an email from New Jersey Lieutenant Governor's office. In which her office explained a decision were made in connection to previous correspondence(s) mailed. Finally, NJ Lieutenant Governor scanned a copy of the decision to the plaintiffs email. Bewildered, the plaintiff sought counsel in this matter. Upon inspection of evidence through NJ fact findings process; there noted throughout NJ fact finding mentions of Vermont's Board of Nursing with a copy of a letter plaintiff scribed to Vermont Board of Nursing to the attention of Mrs. Hibbel dated July 30, 2018. (See Exhibits).) Moreover, rifled through the pages lines evidence of alleged conversations between Mary Lee Pollard and Vermont's Board of Nursing.

It remains unknown which institution released the document to New Jersey Board of Nursing. Plaintiff reached out to New Jersey also writing the Executive Director to learn more of her findings. However, NJ Board did not return my calls However, there were several questions counsel and I could not answer; they are: How did NJ Board of Nursing receive a correspondence drafted to Vermont Board of Nursing; How did New Jersey learn of plaintiff's request for examination? Who provided Vermont with information and correspondence to New Jersey? Who or Where did the investigator gather a personally drafted document? Who was the investigator? To whom or what agency did VT Board of Nursing release the information? Who initiated the request? And by what means? Was there a subpoena? Was there a criminal trial? Was the request in connection to complaint of health and safety? Was there a public hearing?Does the letter have a direct correlation with Vermont's review

process for examination? Who authorized the release of the letter? Did VT Board of Nursing have Ms. Jolly written consent? Has VT Board of Nursing provided the plaintiff with a letter of denial and appeal process? What administrative policy or rule was used to determine the plaintiff denial? What is VT Board of Nursing lowest educational requirement for RN exam?

VT Board of Nursing Section 4.30 Registered Nurses outlines requirements for RN examination they are: 180 hours of theory; 400 clinical hours; Theory should include the following (1) Adult Nursing (2) Maternal/Infant Nursing (3) Pediatric Nursing (4)Psychiatric/ Mental Nursing (5) 80 hours of Anatomy and Physiology (6) Microbiology (7) (80 hours of Social/Behavioral Sciences.

Plaintiff's submission of transcripts from Rowan @ Gloucester County College and Southern New Hampshire University and Excelsior College provide evidence of satisfactory completion of the above requirements. (See exhibits)

Administrative Rule 5.6& 6.6( c)  Licensure by Endorsement or Experience:   If there is a question of applicants education or practice of nursing, the board may require a job description. Or other evidence of the required qualifications and expected job responsibilities.  The job description shall be certified as true: VT Board did not request a curriculum vitae from plaintiff; nor request certification of qualifications; and or request a job description.

Administrative Rules: 5.7 A person holding another unencumbered license in another states jurisdiction may practice nursing in Vermont under the supervision of an unencumbered licensed RN as a part of an educational offering. Practice under this exemption shall not exceed 30 days.

Plaintiff holds an unencumbered license in three states; Enlight of Vermont's educational requirements and Mrs. Lavoie Licensing Agent insistence on additional proof of education, did not request a job description, application to the Alternative Pathway to licensure, and or work for 30 days in Vermont to cure clinical deficiencies

Administrative Rules 6.3 .  To be eligible for examination as a Registered Nurse; the applicant must: graduate from an approved registered nursing program as shown by the verification form; and for those outside of Vermont transcripts.

Apply and receive board approval for NCLEX RN Examination

Plaintiff was provided an educational verification form from Michele Lavoie Licensing Agent 1 (Vt BON). In which, form data were  supplied. Mrs. Lavoie rejected the plaintiffs forms on two occasions.  One she sites; we don't  use credit hours we use theory hours.(see exhibits). December 2017 plaintiff  paid Pearson Vue 200.00 dollars  for RN–NCLEX examination. Inasmuch; plaintiff met state requirements for examination; however, VT Board did not approve her application for examination.

University of Vermont Health Network partnered with Excelsior College (www.excelsior.edu). Thereby through this corporate affiliation University of Vermont partners enjoy 20% of tution; transfer of 117 credits; no application fees and personalized advising.  Excelsior College drafted a letter to potential Vermont students on or about June 2015. Excelsior's correspondence stipulates graduates in the State of Vermont can not apply to the State of Vermont for examination. Further explaining RN graduates can only apply by endorsement. Wherefore, explaining Vermont Board of Nursing requires 480 hours of clinical experience to qualify for licensure. Finally, offering student(s) alternative options of examination; to include other jurisdictions and federal institutions. (See Exhibits).

Whereas, Excelsiors involvement in the plaintiff's application for examination is moot. Through Excelsior's stipulation agreement with Vermont residents, they've acknowledged graduates will not be able to sit for RN examination in Vermont due to clinical deficiencies. Whereby, VT Board requires 400 clinical hours; Excelsior offers a 2 ½ day hospital visit (CPNE).Inasmuch; does not meet Vermont clinical requirements. That aside, Mary Lee Pollard has no fellowship in these matters as (1) Vermont Board of Nursing doesn't accept Excelsior graduates for examination ( see exhibit) (2) June 2018 Donna Kerscher Excelsior representative had already provided a curriculum analysis to include the statement " RN Theory Completed" via submission to Vermont Board of Nursing (3) Plaintiff previously attended Excelsior College Student ID 3039983; as such; wa protected by FERPA and US student records privacy laws.

Plaintiffs Cease and Desist letter drafted to Mary Lee Pollard with copies of the class action lawsuit data provided to defendant was obtained from Vermont Board of Nursing database. (RTKL obtained 5/16/19), Unknowingly the plaintiff witnessed attorney -client, Mrs. Pollards Cease and Desist letter; plaintiffs personal email address; address; faxes and court documents published in Vermont's public database; in which can be access through (RTKL) open records.

RTKL, open records require agencies to notify persons involved of the request, as such: person may request to withhold specific information. Specifically, Section 502(b)(1) provides that agency open-records officer must direct Did any staff /government employee notify Ms. Jolly of the request?

FERPA - Federal law protects the privacy of student education records. The law applies to all schools that receive funds under an applicable program of the U.S. Department of Education.FERPA gives parents certain rights with respect to their children's education records. These rights transfer to the student when he or she reaches the age of 18 or attends a school beyond the high school level. Students to whom the rights have transferred are "eligible students."

Schools may disclose, without consent, "directory" information such as a student's name, address, telephone number, date and place of birth, honors and awards, and dates of attendance. However, schools must tell parents and eligible students about directory

Ms. Pollard letter includes information regarding State of Pennsylvania. Plaintiff is a resident of Pennsylvania' whereby Pennsylvania Board of Nursing has not contacted the plaintiff in relation to Ms. Pollards assertions. As such; there's no protocol for Excelsior College to know plaintiff intimate affairs with Pennsylvania which was **ONLY** provided to New Jersey during the fact findings process.

Whereas, New Jersey Board exacted an internal investigation toward plaintiff's license on or about July 2018. Clues or facts were gained through New Jersey evidence findings that their too we find Ms. Pollards involvement. Riffled through pages of NJ Board findings are allegations of "misrepresentation, fraud and deceit". Their findings include matters which did not occur in Vermont. Actually on more than one occasion Vermont Board of Nursing is stated as evidence allegations of misrepresentation in regards to Vermont. ( See exhibits)

NJ BON " Board of Nursing"; fact finding provides additional clues of conspiracy noting the following. On or about August 2018;" NJ BON received a call from an Excelsior College representative who informed the board of plaintiff's similar activities in Vermont". (see exhibits) Affixed to NJ BON findings was a letter transcribed by Mary Lee Pollard "Excelsior College" to Missouri Board of Nursing where Mrs. Pollard accuses the plaintiff of misrepresentation, fraud and deception. ( see exhibits) Five months after completion of Vt Boards online application; perfectly align with New Jersey timeline do we see evidence of collusion. Mary Lee Pollard transcribes on August 15, 2018; that she was informed by Vermont's BON that I misrepresented myself as a Excelsior graduate. Paragraph three; Mrs.

information and allow parents and eligible students a reasonable amount of time to request that the school not disclose directory information about them. Schools must notify parents and eligible students annually of their rights under FERPA. Plaintiff was unaware that her personal information was being faxed, emailed and transcribed through three different states. Furthermore, plaintiff did not agree or provide consent for the transmission of such information.

Wherefore, plaintiff not provided an opportunity as prescribed by law to opt out of disclosure of sensitive attorney client privileged information. Furthermore, as evidenced by Jaffa files (pg 2) whereby explains Phyllis Mitchell, Program Manager; phoned Excelsior College had concerns regarding the application of the plaintiff. Despite this, as stated above Vermont Board of Nursing do not approve Excelsior graduates for examination. The mere fact there were conversations along these lines would be a stretch of the imagination.

Wherefore, Jaffa Esq. acknowledges Phyllis Mitchell spoke with Mary Lee Pollard on or about August 2018. Consequently, August 15, 2018 Ms. Pollard scribed Cease and Desist letter. Ms. Pollard's letter outlines information she would not have privilege to unless provided by other state agencies. Since, there isn't protocol or administrative rule to suggest otherwise. Vermont Board of Nursing, Excelsior College and New Jersey conspired to destroy, malign and irrevocable harm the plaintiff.

*Due Process Clauses* provides that no states shall deprive any "person" of "life, liberty and the pursuit of happiness. At no such time did Mr.Gilman request a curriculum vitae or any other supporting documentation to support consideration for the examination.

.Finally looking at the issue... (1) Ms. Jolly applied for an application for RN licensure by examination .(2) Ms. Jolly submitted transcripts (3) the end (4) Ms. Jolly was not provided a letter of denial (5) Was not given instructions on how to appeal the decision(6)VT board of nursing did not request inquiry of Ms. Jolly employment history(6) VT BON released a letter written to Lauren Hibbert to Excelsior College.(7) Plaintiffs personal letter to Lauren Hibbert is now published in New Jersey and the World Wide Web. (see exhibits)

## INTRODUCTION:

## PRIMA FACIE

In *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment.[5] First, the plaintiff has the burden of proving by
the preponderance of the evidence. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the applicant's rejection." *Id.,* at 802. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a

preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.,* at 804.

- Ms. Jolly has dual membership to protected class; age and race
- She meets the educational and occupational requirements for Alternative Pathway to licensure, experience and 50 hours of nursing in two year period
- She was rejected in spite of qualifications
- She was denied procedural, and administrative safeguards

State Boards of nursing typically offer alternative methods given may applicants matriculate into nursing as a second career. Whereby, these methods are non-traditional methods. For instance; See Below: It is not uncommon for State Boards of nursing to offer applicants these options.

### § 54.1 Administrative Rules Virginia Board of Nursing.

3017.1. Registered nurse provisional license.– The Board may issue a provisional license to an applicant for licensure as a registered nurse who

has met the educational and examination requirements for licensure, in order to allow the applicant to obtain clinical experience, as specified by the Board in regulation. A person practicing under a provisional license shall only practice under the supervision of a licensed registered nurse, in accordance with regulations established by the Board.

thousand hours of practice experience in the role of an RN. (b) Only students licensed as an LPN in Washington state and identified by the nontraditional program on July 27, 2017, will be considered eligible to obtain initial licensure from the commission under this section. (d) Complete one thousand hours of practice under an interim permit in the role of an RN;e) Provide documented evidence from a commission approved supervising licensed RN verifying the interim permit holder successfully completed the one thousand hours of practice in an RN role.

**Tennessee Administrative Rules Chapter 1000-01 -Qualifications**

An applicant shall have general education equivalent to that required for Tennessee's certificates for licensure by examination at the time the candidate was accepted for licensure in the first jurisdiction.

**21 ncac 36 .0224 North Carolina Administrative Rules**

**COMPONENTS OF NURSING PRACTICE FOR THE REGISTERED NURSE**

(a) The responsibilities that a registered nurse can safely accept shall be determined by such practice setting variables as:

(1)     **the nurse's qualifications,** including:

(A)     **basic educational preparation;** and

(B)     knowledge and skills subsequently acquired through continuing education and practice;

(2)     the complexity and frequency of nursing care needed by the client population;

(3)     the proximity of clients to personnel in the practice setting in which the nurse practices.

**NAC 632.170 Nevada Administrative Rules   Qualifications for license or certificate without examination.**

An applicant for a license to practice as a registered nurse must:

(a)  Have completed a **course of study** in an accredited school of professional nursing. If the applicant graduated on or after January 1, 1952, he or she must have theory and clinical experience in medical-surgical nursing, maternal and child health nursing, and mental health and psychiatric nursing.

(b)  Submit to the Board:

(1)  A completed application;

(2)  A complete set of his or her fingerprints or two completed fingerprint cards; and

(3)  The appropriate fee.

**Connecticut Department of Public Health**- RN Licensing External degree programs are reviewed and approved on an individual basis.  To date, Excelsior College's   External Degree program has been approved at both the Associate and Baccalaureate levels.

**WAC 246-840-048 State of Washington Administrative Rules**

246-840-010(b) An LPN successfully completing a nontraditional nursing program after July 27, 2020, may obtain licensure by endorsement in Washington state after completing one thousand hours of practice under an RN license in another state, without discipline.

(2)(a) An LPN successfully completing the nontraditional nursing program and passing the National Council of State Boards of Nursing Registered Nurse Licensing Examination (NCLEX-RN®) may be eligible to receive an interim permit for the purpose of completing one

**VERMONT EXHIBITS**

1) Attorney Client Letter Submitted to Mary Lee Pollard Excelsior College 8/17/18
2) Senator Bernie Sanders / Jim Condos Letter dated 8/8/2018
3) Letter Sent to Jim Condos Vermont Governor cc/ Lauren Hibbert 7/30/18
4) Cease and Desist Response to Mary Lee Pollard dated 8/27/2019
5) Attorney Client Scanned twice 8/17/2018
6) Cease and Desist Response from Mary Lee Pollard 08/15/2018
7) Vermont Education Form dated 05/08/18
8) Excelsior College completion of Vermont forms 06/13/2018
9) Court Documents class action lawsuit Castellaw v, Excelsior College exhibit date unknown; correspondence not stamped with Department of State stamp
10) Plaintiff's email to Donna Kercher Excelsior College 06/13/2018
11) Excelsior College Stipulation to Vermont Students with acknowledgement of eligibility status.
12) Jaffa Esq (2) page reflects conversations between Jaffa and Hermina Law in relation to Castellaw v Excelsior June 2018; in which she discusses Vermont's concerns. However Hermina Law group did not contact this scribe in relation to these allegations.
13) Vermont Administrative Rules
14) Excelsior College FERPA clauses
15) Jaffe Esq. letter to Judge Mann 04/2019
16) Vermont Database messages
17) Original Complaint Excelsior College 2014

**Please note: Plaintiffs transcripts submitted to the board are not scanned into Vermont database.**

**NEW JERSEY BOARD FACT FINDINGS EXHIBITS**

1) Endorsement application completed for New Jersey Board of Nursing (please note education lacks (Excelsior College) "LPN"
2) Plaintiff's letter to Vermont Director Lauren Hibbert dated 07/30/2018; please note fax transmission from Vermont Board of Nursing to New Jersey Board of Nursing fax number(s) 1-8028282368 and 1-415-484-7068 on July 30, 2018
3) Excelsior College Mary Lee Pollard Missouri State Board of Nursing 08/15/2018
4) Deborah Zaccurelli State of New Representative

# I.   CLAIM

Plaintiff seeks summary judgment on count one. Plaintiff contends that "[t]he relationship between the Board of Nursing and Ms. Jolly enjoined a general agreement afforded to all US citizens 32 CFR § 505.7 & Sec. 5 of No. 158 of the Acts of the 2003

the terms of which were enumerated in the Public Records, Privacy and Electronic Records Vermont (`the Handbook'). plaintiff's Motion for Summary Judgment. Moreover, Ms. Jolly claims that "[i]n the Handbook, the legislative council developed 2005 promised to provide residents of Vermont and external partners protections from intrusions of privacy. Vermont Board of Nursing violated Privacy Rights Act 1974; Public Records Act;  Disclosure of personal information to other agencies and third parties 32.CFR. 505.7. Ms. Jolly was afforded this protections now abandoned by Vermont Board of Nursing. Through the abortion rights Ms. Jolly's information was disseminated to a third parties  without written or expressed consent. State and Federal constitutions provide  procedural protections regarding dissemination of information to include notifying the individual in question of the request.

The Board of Nursing actions were in direct opposition to State and Federal laws. Vermont legislation (2005) outlines the state rights and responsibilities to citizens to include their obligations of privacy to all citizens,, as a matter of law, the board of nursing did breach Ms. Jolly's rights adjoined above.  Public Records Policy; 1 V.S.A 315 Statement of Policy; affords,

all people the right to privacy in their personal and economic pursuits, which ought to be protected unless specific information is needed to review the action of a governmental officer. Therefore, Ms. Jolly's pursuit of an Alternative Path of licensure was (1) illegal and (2). definitely not rebuked. Whereas, the Board of Nursing stripped Ms. Jolly of her privacy, exposed her information to third party actors in an effort to shame or humiliate. There's clear, concise evidence affixed to support the evidence of privacy rights and other violations. Pursuant to 32.CFR 505.7 Disclosure of information to third parties is apparent and affixed knowing a confidential letter scribed by the plaintiff was submitted to a non-participate; third party institution later released to a state government which has resulted in the publishing of Ms Jolly's private information to public record. (EXHIBIT 2).

# II   CLAIM

Plaintiff seeks summary judgment on count 2;  Section 242 of Title 18 makes is a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. acts under "color of law" include acts not only done by federal, state, or local officials within the their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties Of officials, as well as judges, care providers in public health facilities, and others who are

acting as public officials. Department of State oversees the board of nursing. For these reasons, they're governed by federal and state laws. As required by Vermont laws  the Board of Nursing did not provide Ms. Jolly a disposition of her application submitted on March 2018 which is written in state procedural guidelines. Evidence of conspiracy among Vermont Board members to include; failure to comply with federal and state laws; Releasing sensitive correspondence to third party vendors; exciting and encouraging other states to participate in conspiracy through release of sensitive data. Further publishing Ms. Jolly's information in three states non-affiliated with the plaintiffs original request. Allegedly, Mary Lee Pollard received Ms.Jolly's information from Vermont Board of Nursing who then provided the information to New Jersey Board of Nursing.

Wherefore through these abuses Vt Board released Ms. Jolly's correspondence Vermont, New Jersey Board of Nursing and Excelsior College conspired together to  impair Ms. Jolly's New Jersey nursing license through harsh unfounded processes. Whereas, Vermont Board of Nursing accepted court documents from Excelsior College; inasmuch also a copy of Mrs. Jolly's response to Mary Lee Pollard's cease and desist. That aside, through exchange of Ms. Jolly's information without express written consent; these institutions violated Ms. Jolly's civil rights and due process laws.

Excelsior sought to ensure retaliation upon Ms. Jolly, thereby worked with Vermont Board of Nursing to ensure the plaintiffs demise. We note at the outset the preeminence of the Vermont Constitution in our governmental scheme. As the expression of the will of the

people, a constitution stands above legislative or judge-made law. "[W]here a constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provisions." *Davis v. Burke,* 179 U.S. 399, 403, 21 S.Ct. 210, 212, 45 L.Ed. 249 (1900). Therefore, the absence of legislative enabling statutes cannot be construed to nullify rights provided by the constitution if those rights are sufficiently specified. See *Gray v. Bryant,* 125 So.2d 846, 851 (Fla.1960); *Peper v. Princeton Univ. Bd. of Trustees,* 77 N.J. 55, 389 A.2d 465, 476 (1978); cf. *Phillips v. Youth Dev. Program, Inc.,* 390 Mass. 652, 459 N.E.2d 453, 457 & n. 4 (Mass.1983) ("The absence of a statutory remedy for the violation of constitutional rights cannot absolutely and in all cases bar judicial protection of those rights."). But see *Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582, 584 n. 1 (Tex.Ct.App.1987) (because no statute or case provides for redress of violation of constitutional right, there is no state constitutional tort akin to federal *Bivens* claim).

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury." *Marbury v. Madison,* 5 U.S. 137, 163, 1 Cranch 137,

*928 163, 2 L.Ed. 60 (1803). The Vermont Constitution mandates that "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property or character...." Vt. Const. ch. I, art. 4. Though Article 4 does not create substantive rights, it does ensure access to the judicial process. See *Levinsky v. Diamond,* 151 Vt. 178, 197, 559 A.2d 1073, 1086 (1989). The common law, which provides a

remedy for every wrong, provides a remedy for violation of a constitutional right. See *Sheltra v. Smith,* 136 Vt. 472, 475, 392 A.2d 431, 433 (1978) (the law will remedy wrongs that merit redress). To deprive individuals of a means by which to vindicate their constitutional rights would negate the will of the people in ratifying the constitution, and neither this Court nor the Legislature has the power to do so.

In determining whether a constitutional provision is self-executing, most jurisdictions have measured their constitutions against the standard adopted by the United States Supreme Court in *Davis v. Burke:*

Determining whether a provision supplies a sufficient rule entails application of certain relevant criteria, no one of which is dispositive. First, a self-executing provision should do more than express only general principles; it may describe the right in detail, including the means for its enjoyment and protection. See *Convention Center Referendum Comm. v. Board of Elections & Ethics,* 399 A.2d 550, 552 (D.C.Ct.App.1979). Ordinarily a self-executing provision does not contain a directive to the legislature for further action. *Id.* The legislative history may be particularly informative as to the provisions intended operation. *Id.* Finally, a decision for or against self-execution must harmonize with the scheme of rights established in the constitution as a whole.

# III.   CLAIM

Plaintiff seeks summary judgment;  Our task, of course, is to resolve the issue by constitutional measurement, free of emotion and of predilection. We seek earnestly to do this, and, because we do, we  have inquired into, and in this factual summary  place emphasis upon, application and educational history and what that history reveals about caucasian attitudes toward minorities over the centuries. We bear in mind, too, Ms.Jolly's experience in relation to these matters. Learning two state governments and a online college conspired to destroy projected future income and smear her credentials. Wherefore broadcasting and publishing  statements that Ms. Jolly misrepresented herself as an Excelsior graduate is a gross misunderstanding and miscaricuture of her character. Typical language denotes fraud or deception; however, unlike Excelsior College Ms. Jolly's professional career doesn't align with these sediments.  *Lochner* v. *New York,* 198 U. S. 45, 76 (1905):Moreover,  Vermont's online application process does not allow applicants to move forward through process without selecting a graduating date. (See Exhibits). Now affixed to this complaint evidence of these truths;  there was no viable way for Ms. Jolly to apply to the "Alternative Program" without going through the online application process. Despite this, Ms. Jolly does meet the requirements for NCLEX-RN examination. Upon careful inspection; Rowan Gloucester County College and Excelsior College submitted sufficient  evidence to support Ms. Jolly's candidacy.

fostered by the assurance of confidentiality, and the justification for granting the privilege "ceases when the client does not appear to have been desirous of secrecy." 8 J. Wigmore, Evidence § 2311, at 599 (McNaughton rev. 1961).

The Eighth Circuit's "limited waiver" rule has little to do with this confidential link. Considering Mary Lee Pollard released  privileged attorney client documentation which demonstrates the two institutions efforts and commitment to entrapping smearing and destroying Ms. Jolly professional career. Further providing the documents to New Jersey and United States District Court for publishing in court documents Castellaw v Excelsior College; in an effort to shame the applicant. Voluntary cooperation with government investigations may be a laudable activity, but it is hard to understand how such conduct improves the attorney-client relationship. If the client feels the need to keep his communications with his attorney confidential, he is free to do so under the traditional rule by consistently asserting the privilege, even when the discovery request comes from a "friendly" agency. The consistent gross nature in which these agencies conducted themselves defines a combined conscenses to enact mistruths against the plaintiff.

# V  CLAIM

Under Title VII Protected Classes of the Civil Rights Act of 1964 (Pub. L. 88-352) Vol 42(2000e) as amended in the U.S. code prohibits discrimination based on race, color, religion, sex and national origin.  Race or color identification is understood to be any category circumscribed

through attorney client communications into public records violated the law.   Whatever the truth may be concerning Vermont Board of Nursing and Excelsior College arrangements to prevent release or disclosure of these documents to third parties by the board , there is no evidence in the record suggesting attempts to prevent their use by  state officials, staff in the processing of Ms.Jolly's application.

Even after Vermont  was specifically informed by Ms. Jolly of her litigant status in relation to the Castellaw v. Excelsior College class action the privileged documents were scanned and published. Vermont did not request that they be returned unread.  Under these circumstances "it is clear that the mantle of confidentiality which once protected the documents has been so irretrievably breached that an effective waiver of the privilege has been accomplished," *In re Grand Jury Investigation of Ocean Transportation,* 604 F.2d 672, 675 (D.C.Cir.), *cert. denied,* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979).

First, we cannot see how the availability of court documents from an unrelated case would serve the interests underlying the common law privilege for confidential communications between attorney and client. As the Supreme Court has recently reiterated, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client"; the attorney's "'assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.'" *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) (quoting *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888)).The privilege depends on the assumption that full and frank communication will be

[The Constitution] is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar or novel and even shocking ought not to conclude our judgment upon the question whether statutes embodying them conflict with the Constitution of the United States." However, when state and educational institutions participate in defamation of character, it betrayed an destroyed Ms. Jolly's trust in public officials and humanity. The mere fact Vermont Board of Nursing participated in data collection non-affiliated with the application is astounding. The board of nursing collected data from a third source (Excelsior College) in determining Ms. Jolly's participation in Alternative Program for licensure. Wherefore, instead of measuring the plaintiff's accomplish based upon administrative policies; which are a combination of educational and occupational merits; the nursing board based its decision and discretion solely upon documentation received from Mary Lee Pollard; Dean of Nursing Excelsior College. Insomuch; depriving Ms. Jolly of fourth amendment, due process, civil rights and equal access under the color of law. Attested to these facts are; denial of appeal, failure to provide a denial letter; failure to comply with state,federal and administrative laws. Conspiring with others to exact harm upon Ms. Jolly character and occupation;slandering the plaintiffs name in public documents caused irrevocable harm and emotional distress.

## IV  CLAIM

Plaintiff seeks summary judgment; In the present case, Vermont Board of Nursing has destroyed the confidential status of the seven attorney-client communications by permitting their disclosure to the application process, furthermore by applying information gained

by law. Applying these general principles, we first consider whether Chapter I, Article 1 specifies a right enforceable against the state. Article 1 provides, in part: That all men are born equally free and independent, and have certain natural, inherent, and unalienable rights, amongst which are the enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety.

American citizenship bestows upon its citizen the fruits above. However, Ms.Jolly was unable to enjoy these efforts when allegedly, Mary Lee Pollard and Vermont Board of Nursing et al. conspired to delineate her rights as a citizen. Further, Jaffe files "pg 2" says Phyllis Mitchell; Program Manager for Nursing Assistants called her to discuss her concerns. Whereas, Ms. Jolly is not a CNA; yet a two time college graduate; in which, the board was aware having received Ms. Jolly's transcripts. Their covert operative language makes subliminal  mention in which blacks should be nursing assistants not nurses.

Second, it is similarly beyond dispute—and no party disagrees—that § 601 prohibits only intentional discrimination. In *Regents of Univ. of Cal.* v. *Bakke,* 438 U. S. 265 (1978), the Court reviewed a decision of the California Supreme Court that had enjoined the University of California Medical School from "according any consideration to race in its admissions process." *Id.,* at 272. Essential to the Court's holding reversing that aspect of the California court's decision was the determination that § 601 "proscribe[s] only those racial classifications that would violate the Equal Protection.

 Clause or the Fifth Amendment." *Id.,* at 287 (opinion of Powell, J.); see also *id.,* at 325, 328, 352 (opinion of Brennan, White, Marshall, and Blackmun, JJ.). In *Guardians Assn.* v. *Civil Serv.*

terms. Wherefore, great travesties of justice occurred when the board denied Ms. Jolly access to the program.

# VI

In *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment.[a] First, the plaintiff has the burden of proving by

253 the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.,* at 802. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.,* at 804.

## ANALYSIS

This defamation action arises out of the publication of a Ms. Jolly's personal, professional and attorney-client information by Vermont Board of Nursing and Excelsior College in

*Comm'n of New York City,* 463 U. S. 582 (1983), the Court made clear that under *Bakke* only intentional discrimination was forbidden by § 601. 463 U. S., at 610–611 (Powell, J., joined by Burger, C. J., and Rehnquist, J., concurring in judgment); *id.,* at 612 (O'Connor, J., concurring in judgment); *id.,* at 642 (Stevens, J., joined by Brennan and Blackmun, JJ., dissenting). What we said in *Alexander* v. *Choate,* 469 U. S. 287, 293 (1985), is true today: "Title VI itself directly reach[es] only instances of intentional discrimination. That said, Vermont Board of Nursing intentionally denied Ms. Jolly access to an federally funded program available to any American citizen who applies and meets course requirements. SEE EXHIBITS;

Underlying the majority's dismissive treatment of our prior cases is a flawed understanding of the structure of Title VI and, more particularly, of the relationship between §§ 601 and 602. To some extent, confusion as to the relationship between the provisions is understandable, as Title VI is a deceptively simple statute. Section 601 of the Act lays out its straightforward commitment: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U. S. C. § 2000d. Section 602 "authorize[s] and direct[s]" all federal departments and agencies empowered to extend federal financial assistance to issue "rules, regulations, or orders of general applicability" in order to "effectuate" § 601's antidiscrimination mandate. 42 U. S. C. § 2000d–1.

States receive federal funding, thereby through acceptance must adhere to federal regulations. As such by de facto the boards "Alternative Program" is subjugated to the same

August 2018.. The question before us is whether the allegedly defamatory statements set forth in the letters are constitutionally protected documents. The plaintiff, Maketa S Jolly, is a Nurse and Educator in the City of Philadelphia. The complaint averred that Ms. Jolly "misrepresented" herself as a Excelsior College graduate. Ms. Jolly"is widely esteemed among his colleagues and enjoys the highest possible reputation as a scholar of integrity and a teacher." 2. In August 2018, Ms. Jolly applied for RN examination through Vermont Board of Nursing Alternative Pathway to licensure. Transcripts were sent to the board to reflect Ms. Jolly's academic performance. VT Board of Nursing failed to provide Ms. Jolly with a copy of denial; or appeal process. Previously Ms. Jolly was a litigant in a class action lawsuit involving Excelsior College. At which time, claims were made against Excelsior for "misrepresenting statical data, failure to educate and diversity, racial discrimination. Once again, in 2018, Excelsior College was sued again for "misrepresentation of statistical data i.e graduation pass rates."On or about August 2018, the plaintiff received a Cease and Desist letter from Mary Lee Pollard; "with claims of "Misrepresentation, Fraud and Deception". Ms. Jolly responded in kind; asking Mrs. Pollard to Cease and Desist her communicable mistruths to state boards of nursing. Upon inspection of evidence submitted to her in another unrelated matter; Ms. Jolly learned of Vermont's Breach of Privacy, Due Process, Civil Rights etc. rules. Without trepidation the plaintiff called Vermont Board of Nursing to inquire of the Breach. In my opinion; rude and off putting; She learned Vermont, New Jersey BON and Excelsior College conspired against the applicant to destroy her career secondary to class action lawsuits filings.

Ms. Jolly requested through Open Record (RTKL) access to any correspondence submitted, emails and other information pertaining to her application. Upon inspection she learned Excelsior College faxed a copy of Ms. Jolly's Cease and Desist letter sent to her attorney and Mary Lee Pollard; (Castellaw v. Excelsior court document); Mary Pollard's Cease and Desist letter of threat, misrepresentation; emails and letters sent Vermont staff; Congressional letters to Bernie Sanders;Letter to Jim Condos VT Governor; Rowan Gloucester County College form completion; and a host of other documents. Draw your attention to Mary Lee Pollards involvement with the Vermont Board of Nursing; in fact, June 13, 2018 Donna Kercher Excelsior representative completed plaintiff forms and returned the to Vermont (see exhibit) Approximately two months, after Excelsior acknowledge completion of RN theory program did Mary Lee Pollard enact her Cease and Desist letter. Although willing, VT board of nursing had yet to deny or decline my application for an Alternative Path" to licensure. Instead, Mr. Gilman Vermont General Counsel failed to provide written appeal instructions and or a denial. Mr. Gilman's original message explained that the board believed I would not be a good candidate. However, he lacked providing an actual meritus, policy or education reason.

Vermont Board of Nursing Administrative Rules:

1.6 Right to a Written Decision

- (a) The Board will notify applicants in writing of all decisions to either grant or deny
- license, license renewal or reinstatement. If a license, renewal, or reinstatement

determinant of human traits and capacities and that racial differences produce an inherent superiority of a particular race. Also, a doctrine or political program based on the assumption of racism and designed to execute its principles by those who would deny and negate that they've published the plaintiffs protected information without consent.

Paragraphs purported to illustrate " fraud, liar" by describing certain alleged events. The text concluded which  alluded to uneducation; or ineligibility for NCLEX-RN examination. The struggle for the "right-to-vote," is the same as blacks still struggling for a right to be educated, rights to opportunities.

## DECLARATIVE INJUNCTION/PRELIMINARY AND PERMANENT INJUNCTIONS

### I   DIRECT SUIT UNDER US CONSTITUTION

Many cases discussed above involved classifications burdening groups that have suffered discrimination in our society. In 1978, the Court confronted the question whether race-based governmental action designed to *benefit* such groups should also be subject to "the most rigid

Where it isn't illegal to apply to for examination in America, Vermont Board of Nursing offers several paths to licensure. Below affixed to the complaint you'll find evidence of these truths. Rule 6.6 (a)(b) outlines avenues applicants are qualified for licensure. Remarkably, letter "c" of board rules: applicant shall provide proof of job/occupation evidence of qualifications from employers.

6.6 Licensure by Endorsement and Experience ( Vermont Administrative Rules)

(b)The Board may issue a license to an applicant who:(b) has practiced nursing in that jurisdiction for a minimum of: (1) 50 days (400 hours) in the previous 2 years; or 2) 120 days (960 hours) in the previous 5 years.

(c) If there is a question about the applicant's education or practice of nursing,the Board may require the applicant to provide a job description or other evidence of the required qualifications and expected job responsibilities. The job description shall be certified as true by employers or other appropriate persons.

6.7 Exemption

A person holding an unencumbered license in another United States jurisdiction may practice nursing in Vermont under supervision of a Vermont unencumbered licensed RN as a part of an educational offering. Practice under this exemption shall not exceed 30 days in any calendar year.

Part 11

Alternative Program for Nurses and Nursing Assistants

11.1 Alternative Program Created

As authorized by 26 V.S.A. § 1574(9) the Board has created "The Alternative Program" ("the Program") for licensees and applicants eligible for licensure.

Evidence of system failures, racial intimidation, retaliation coupled with multiple breaches has caused Ms. Jolly irrevocable harm. Whereas, this scribe prays for punitive damages. The Court most recently considered the constitutional limits on suits for defamation in *Dun & Bradstreet, Inc.* v. *Greenmoss Builders, Inc.,* 472 U. S. 749 (1985). In sharp contrast to *New York Times, Dun & Bradstreet* involved not only a private-figure plaintiff, but also speech of purely private concern. 472 U. S., at 751-752. A plurality of the Court in *Dun & Bradstreet* was convinced that, in a case with such a configuration of speech and plaintiff, the showing of actual malice needed to recover punitive damages under either *New York Times* or *Gertz* was unnecessary:

"In light of the reduced constitutional value of speech involving no matters of public concern, we hold that the state interest [in preserving private reputation] adequately supports awards of presumed and punitive  damages -- even absent a showing of In *Gertz* v. *Robert Welch, Inc.,* 418 U. S. 323 (1974), this Court held that a person may become a public figure for a limited range of issues if he "voluntarily injects himself or is drawn into a particular public controversy." *Id.,* at 351. Such a person, the Court reasoned, resembles a public official in that he typically enjoys "significantly greater access to the channels of effective communication" and knowingly "runs the risk of closer public scrutiny" than would have been true had he remained in private life. *Id.,* at 344. The passage of time, I believe, often will be relevant in deciding whether a person possesses these two public-figure characteristics. First, a lapse of

years between a controversial event and a libelous utterance may diminish the defamed party's access to the means of counterargument. At the height of the publicity

surrounding the  controversy here, petitioner may well have had sufficient access to the internet effectively to rebut the charges. It would strain credulity to suggest that petitioner could have commanded such interest when defendants published plaintiff's information in court documents.  Second, the passage of time may diminish the "risk of public scrutiny" that a putative public figure may fairly be said to have assume " 472 U. S., at 761 (opinion of POWELL, J.) (footnote omitted).

While Ms. Jolly has graduated on two occasions from Colleges/Universities  a Licensed Practical Nurse more than fifteen years without abrogate of licensure. Plaintiff previous employers were Temple University Hospital, University of Pennsylvania and Kindred Hospital etc. Section 11.1 Vermont Administrative rules  the program rules allow licensure three separate ways; (1) Alternative Path (2) Experience (3 )6.7  Exemption.

 Complaint alleged defamation, libel and slander between the months of August 2018 and December 2018. The advertisement began by stating that Ms. Jolly was "misrepresenting herself as an "Excelsior College graduate".  the US state boards know by  now and have received Mary Lee Pollard letter of indictment. In positive affirmation of the right to live in human dignity as guaranteed by the U. S. Constitution and the Bill of Rights." It went on to charge that "in their efforts to defame Ms. Jolly they are being met by an unprecedented wave of acceptance of this narrative; or a minority woman contacting boards misrepresenting herself; classic racism. Racism– a belief that race is the primary

- If, denied, the Board will give the applicant specific reasons and will also inform
- The applicant of the right to appeal the Board's decision. This is called a "preliminary denial"

The Board, or the Office on behalf of the Board, most often issues a preliminary denial of licensure, renewal or reinstatement when it appears from the application and accompanying documents that the applicant does not meet all of the requirements for

licensure. When this occurs, the applicant is notified of the right to file an appeal which is heard as a formal hearing by the Board. At the hearing the burden of proof is on the applicant to show that the preliminary denial was in error. After that hearing the Board issues a final decision in writing. If the decision affirms the preliminary denial of a license, the decision informs the applicant of his or her appellate rights.

2.17 Denial of Application

When an application is not approved, the Board will:issue a preliminary denial letter explaining its decision. notify the applicant of the right to file an appeal which is heard in a formal hearing. At the hearing the burden of proof is on the applicant to show that the preliminary denial was in error and that the applicant is entitled to approval.After that If the applicant does not appeal the preliminary denial within 30 days,the denial becomes final a) issue a preliminary denial letter explaining its decision

Vermont Board of Nursing conduct has caused and will continue to cause Ms. Jolly to suffer immediate and irreparable harm to her constitutional rights to due process. No money damages can remedy this harm,, and the State Board has no legal avenue by which to recover any loss of reputation. Vermont Board of Nursing conduct has deprived the plaintiff of a fair and impartial hearing, to which the Administrative procedures and Rules is entitled in accordance with Administrative Procedure Act" (3 V.S.A. §§ 801849), 3 V.S.A. §§ 121 132).

The Board of Nursing conduct constitutes arbitrary and capricious agency action in violation of the Federal APA, 5 U.S.C. § 500 et seq. Further, the Board proceedings against Ms. Jolly are fundamentally flawed such that no valid order can result from the administrative proceedings, and immediate review by this Court for injunctive relief IS proper.



Plaintiff demonstrated the most fundamental right of all Americans when she applied for RN examination. Notwithstanding, the time and patience required to gather all transcripts for consideration. To learn, state government officials and schools were plotting to malign and destroy someone professional and personal career is unfathomable.



Essentially, what's happened through systemic failure Vermont's online application process will not allow candidates to move forward out entering a date. Inadvertently, this date shows up as a graduation date. Clearly defined on documents submitted by Excelsior College that the student did not graduate from their online institution. However, the plaintiff did

graduate from the collegiate institutions. To minimize three colleges and universities for an online educator is mind blowing.  Moreover, for the real distractor; which is racism. Albeit, eligible for testing in my opinion, th above person(s) wanted to ensure (1) retaliation for class action (2) minority (3) due to reaching out to Bernie and others. It's far cry from humanity when Americans are blaming one another for applying for opportunities.

Greater, is retaliating against a litigant who was disenfranchised not one but twice.

# CASE LAW

*Board of Trustees of Keene State College* v. *Sweeney,* 439 U. S. 24, 25, n. 2 (1978)

*Teamsters* v. *United States,*      431 U. S. 324, 358

*Furnco Construction Corp.* v. *Waters,* 438 U. S. 567, 577 (1978)

Whalen v Roe

## PENNSYLVANIA  FEDERAL AND STATE STATUTE

Title 18 § 7507.1. Invasion of privacy.                42 U.S.C. § 1983

055 PA Code. § 5100.32

Act 3 of 2008, Section 701,702, 703, 704

Rule 1.6. Confidentiality of Information.(5)

204 Pa. Code Rule 1.8 and 1.9

Rule 501 and 502 Pa.R.E. 501 is similar to F.R.E. 501

Rule 502(b)(5)(c)

42 Pa.C.S. §§ 5916 and 5928

 Joyner v. SEPTA, 736 A.2d 35 (Pa. Cmwlth.1999)

Pa.R.E. 502(a)(3)

Gillard v. AIG Ins. Co.,

15 A.3d 44 (Pa. 2011) (client was an insurance corporation);

Maleski v. Corporate Life Insurance Co ., 641 A.2d1, 3 (Pa. Cmwlth. 1994) (privilege attaches to communications made by corporate as well as individual clients);Commonwealth v. Mrozek, 657 A.2d 997, 998 99 (Pa. Super. 1995) (client for purposes of privilege include a person seeking legal services);

BAGWELL v. PENNSYLVANIA DEPARTMENT OF EDUCATION

*Cumming* v. *County Board of Education,* 175 U. S. 528

*Missouri ex rel. Gaines* v. *Canada,* 305 U. S. 337; *Sipuel* v. *Oklahoma,* 332 U. S. 631; *Sweatt* v.*Painter,* 339 U. S. 629; *McLaurin* v. *Oklahoma State Regents,* 339 U. S. 637

*Lucas* v. *Forty-Fourth General Assembly of Colorado,* 377 U. S. 713, 736-737 (1964)

Federal Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g

FOIA § 552(b)(7)(C)

United States Department of Justice v. Reporters Committee for Freedom of the Press,

Hodgdon v. Mt. Mansfield Co Restatement of Torts 2d

Pion v. Bean


## VERMONT FEDERAL AND STATE STATUTES

Sec. 5 of No. 158 of the Acts of the 2003(12)(b)(1)(2)

Title 1 General Provisions Chapter 005 : Common Law; General Rights 1.V.S.A 3.17(10)(8)(7)

Title 9 Commerce and Trade Chapter 062; Protection of Personal Information Subchapter 002; Security Breach Notice Act 9. V.S.A 2435  Statue 2435 Notice of Security Breaches

Administrative Procedure Act" (3 V.S.A. §§ 801-849), the "Open Meeting Law" (1 V.S.A. §§ 310 314), the "Access to Public Records Law" (1 V.S.A.§§ 315 320),

and the "Law of Professional Regulation" (3 V.S.A. §§ 121-132).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in her favor and against Defendant, and award the following relief:

A) Declare that Section 2(a) of the Act violates the First and Fourteenth Amendments of the United States Constitution, both on its face and as applied to Plaintiff

B) Preliminarily and permanently enjoin Defendant(s), his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, from encroaching, invading or releasing documents related to by proxy or otherwise application for examination. Further from releasing and or publishing information in connection to this matter or any other.

C) Award Plaintiff costs and reasonable attorneys' fees in this action;

D) Award Plaintiff assumed damages in the amount of 1 million dollars

E) Award Plaintiff punitive damages in the amount of 6 million dollars

F) Award Plaintiff actual damages associated with exponential personal costs

G) Entry of a declaratory judgment, pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 and 2202, declaring that:

H) Summary Judgment Prima Facie for 100,000

PLACE FOR TRIAL

Pennsylvania General Tort Act; Plaintiff request trial in Philadelphia, PA 19103

Exhibits

Vermont
Board of
nursing

 San Francisco CA    Vermont Board of Nsg

**Maketa S Jolly LPN, BA**

Aston, PA 19014

30 July 2018

**Executive Office of Jim Condos**

**CC/Lauren Hibbert Director**
Secretary of Department of State
128 State Street
Montpelier, VT

RE: **Secretary of State Mr. Jim Condos;**


Dear Secretary of State Condos; ,

Im writing in reference to an application which was submitted to Vermont State Board of Nursing. **March 2018 I applied with the Vermont Board of Nursing to consider my application for eligibility for the NCLEX -RN exam.**

For these reasons, I have included my educational background. I graduated from Salem Community College Carneys Point, NJ (Licensed Practical Nurse) August 2002, Also, I graduating from Excelsior College (AAS Registered Nurse Program 2014) Rowan @ Gloucester County College (AAS Liberal Arts May 2015) I graduated from Southern New Hampshire University BA ( Healthcare Studies 2015) . Currently, Im in pursuit of my Masters Degree in Education, scaled to complete winter 2018 with Northcentral University.

Subsequently, I have worked with Ms.Michelle Lavorie who has provided support throughout the process. However, Excelsior College ( Nursing Program RN Associates) has completed every form also providing the Board of Nursing with a breakdown of theory hours and clinical hours, to date Mrs. Lavorie continues to refuse documents from Excelsior College. Currently, I work as an LPN, I have greater than 15 years of experience as a nurse. My professional license numbers can be found on NURSYS website or by simply checking with the following states PA, DE and NJ where I hold unencumbered LPN licenses. Moreover, occupying an RN position and credentialed in New Jersey for more than five months.

Knowing this, I'm simply requesting an opportunity to sit for the NCLEX RN exam. I would like an opportunity, not just to test, however, excel, hopefully, gaining employment in the fabulous State of Vermont.

Q

Home    »    Area Code Lookup    »    415    »    484    »    **415-484-7068**

## 415-484-7068

## Received Call Information

### 📈 About this number

415-484-7068 is a Landline phone number operated by O1 Communications and is located in the city of Stinson Beach in CA. 415-484-7068 has been searched 19 times on YP.ca. Get more information on the 415-484-7068 number, origin, and statistics based on 2 user reports.

### General information

Provider: **O1 Communications**
Usage: Landline
Country: US
Location: Stinson Beach, CA
Area code: 415
Prefix: 484

### Activity

This number has been requested 19 times on YP.ca

### 💬 Give us some feedback

Help us create a caller "profile" for this number
I know the owner of this number »

**WHEN DID YOU RECEIVE THE CALL?**

| Morning | Afternoon | Evening |

**TYPE OF CALL?**

| Scammers | Telemarketer |



vermont
online
database
information
→ michele lavoie



You may check the status of an application or renewal by logging in to your online licensing account with the user ID and password associated with your account.

If you are represented by an agency, contact them for information *prior to* contacting the state of Vermont. All information concerning your application file will first be conveyed to your agency if you have chosen them to represent you during the application process. Agency representation is not required to apply to the state of Vermont.

Please note that your Credentials Evaluation Service (CES) report is only available to this office for a period of *one year.* Therefore your application must be submitted within that one-year time frame.

Email is the primary form of communication from this office.

## Exam information

- National Council for State Boards of Nursing
- Pearson Vue Website

## Educational Program Information

The state of Vermont is currently not accepting applications from applicants educated in Haiti. Effective 9/2/2008.

To better serve you, we have a list of our most frequently asked questions. *Please click on the button below to find the answer to your question before calling or emailing.*

[ Frequently Asked Questions ]

For questions or to contact the board, email or call:

Michelle Lavoie
802-828-2396
michelle.lavoie@sec.state.vt.us

Screen Shot 2019-05-14 at 2.04.25 PM.png (1560×925)



Lauren Hibbert
Director
Vermont online Database



Vermont online Database —
Lauren Hibbart
Director

Office of Professional Regulation Most questions should go directly to the Licensing Administrator for the profession in question. Licensing Nursing Investigators and Inspectors Prosecution Unit Administration Fax Numbers Licensing...

## Advisors
**Professional Regulation**
Alcohol & Drug Abuse Counselor Advisors Member Position Original Appointment Expiration Date Annie Ramniceanu Professional 8/1/2016 8/31/2021 Kim Bushey Professional 8/1/2016 8/31/2020 Gary...

## Nursing Home Administrators
**Professional Regulation**
Nursing home administrators in the state of Vermont are governed by the "advisor" model of regulation, created by the legislature. Two licensed members of the profession are appointed by the secretary of state to advise the director of the Office of...

## Education Information
**Professional Regulation**
Re-Entry Programs Nursing Education Programs in Vermont Nursing Assistant Programs in Vermont NAEP Annual Report Form - Due April 2, 2016  Educational Program Manager Phyllis Mitchell, RN, MSN802-828-3180phyllis.mitchell@sec.state.vt.us

🔏 **mitchellm71511.pdf**
Elections

🔏 **MITCHELL_REP_91512.pdf**
Elections

🔏 **MITCHELL_REP_101512.pdf**
Elections

🔏 **MITCHELL_REP_111512.pdf**
Elections

🔏 **Mitchell Dennis DOCKET AR010407**

*(handwritten)* → Vermont online Database Phyllis Mitchell Program Mgr for CNA





Vermont
Board of
nursing error
message
#1 applicants.

field can not be
left Blank
See above



Screen Shot 2019-05-15 at 6.12.17 PM.png (1592x925)

VERMONT

**REGISTER NEW ACCOUNT**

| First Name * | Middle Name | Last Name * |
|---|---|---|
| Sample Case | Case | Peter |

| Create a User ID * | Email * | Confirm Email * |
|---|---|---|
| PeterCase123 | petercase123@gmail.com | petercase123@gmail.com |

Date of birth *

MM/DD/YYYY

**Please create your password and security questions below.**

Password *

•••••••••••

Confirm Password *

•••••••••••

**Tips for creating a password:**

Your password should meet following criteria

- Minimum 8 characters in length
- Must include upper (A-Z) and lower case (a-z) letters
- Must include numbers (0-9)
- Special Characters (e.g. @,#,$...)
- Do not include First Name, Last Name or your User ID
- Do not have similar User ID and Password

Question 1

Copyright © 2019 State of Vermont. All rights reserved. Accessibility Policy + Privacy Policy



## Board Members

| Vermont State Board of Nursing | Member Position | Appointment Date | Expiration Date |
|---|---|---|---|
| Deborah Swartz | RN | 11/29/2007 | 12/31/2021 |
| Douglas Sutton | RN | 01/01/2015 | 12/31/2019 |
| Ellen Watson | APRN | 12/13/2011 | 12/31/2021 |
| Jennifer Laurent | APRN | 04/23/2014 | 12/31/2023 |
| Kelly Sinclair | LNA | 07/01/2014 | 12/31/2022 |
| Krystal Bernier | LPN | 01/01/2019 | 12/31/2022 |
| Luena Tredwell | LPN | 01/01/2013 | 12/31/2022 |
| Virginia Hudson | RN | 01/18/2012 | 12/31/2023 |
| Wendy Thurston | RN | 01/01/2019 | 12/31/2022 |
| William White Jr. | Public | 10/29/2007 | 12/31/2022 |
| Vacant | Public | | 12/31/2019 |

**LIST OF PROFESSIONS**

**SELECT A PROFESSION**
Select...

**NURSING**
Advanced Practice (APRNs)
Registered Nurses & International
Licensed Practical Nurses
Licensed Nursing Assistants
Online Licensing
Education Information
Statutes & Rules
Committee Charters
Position Statements
Board Minutes & Agendas
Board Members
Resources
Employer Mandatory Reporting
Discipline and Alternative Program
Resources
Frequently Asked Questions

**CONTACT INFORMATION**
**S. Lauren Hibbert**
*Director*
89 Main St, 3rd Floor
Montpelier VT 05620-3402

**ONLINE LICENSING**

**MEETINGS & ANNOUNCEMENTS**

**Upcoming Meetings**
For the schedule of upcoming meetings, please visit the OPR Calendar.

**New opioid overutilization policies, Effective January 1, 2019, CMS Tip Sheet and Prescriber's Guide:**
CMS Tip Sheet
Prescriber's Guide

Vermont Prescription Monitoring System VPMS

**Seeking Board Members**
The Office of Professional Regulation is seeking applications to serve on the Board. Please see our list of vacancies.

Contact Us

**Opioids for Chronic Pain**
Effective August 1, 2015 new Rules governing the prescribing of opioids for chronic pain. View the Rules.



5/18/2019
Screen Shot 2019-05-15 at 6.24.30 PM.png (1552×925)
Case 1:19-cv-01317-DNH-TWD   Document 2   Filed 05/21/19   Page 79 of 115



5/18/2019
Screen Shot 2019-05-11 at 8.14.19 PM.png (1552×925)
Case 1:19-cv-01317-DNH-TWD   Document 2   Filed 05/21/19   Page 80 of 115



# Vermont Board of Nursing
# Administrative Rules
effective: January 15, 2015

## Table of Contents

**Part 1 Introduction and General Provisions**
1.1     Purpose of the Rules
1.2     Laws Governing the Board and its Professions
1.3     Location of Office
1.4     Definitions
1.5     Expiration of Applications
1.6     Right to a Written Decision
1.7     Initial License Issuance
1.8     Change of Name or Address
1.9     License Renewal
1.10    Inactive Status
1.11    Robert's Rules of Order
1.12    Board Meetings: Elections
1.13    Chair Duties
1.14    Vice Chair Duties
1.15    Secretary Duties
1.16    Qualifications of Executive Director
1.17    Authority of Executive Director

**Part 2   Nursing Assistant Education**
2.1     Applicability
2.2     Mission and Objectives
2.3     Organization and Administration
2.4     Program Administrator
2.5     Instructors
2.6     Facilities and Other Resources
2.7     Student Access to Information
2.8     Program and Curriculum
2.9     Patient Contact: Prerequisite
2.10    Curriculum Implementation
2.11    Program Evaluation
2.12    Student Evaluation
2.13    Student and Instructor Records
        **Subpart A    Approval Process for Nursing Education Programs**
2.14    Board Approval Required
2.15    Approval Process, New Program Application
2.16    New Program Application and Review Process
2.17    Denial of Application
2.18    Annual Report
2.19    Consultations

5.6    Licensure by Endorsement and Experience
5.7    Exemption
5.8    Applicants with International Education

**Part 6   Registered Nurse Licensure**
6.1    Requirements for Licensure as a Registered Nurse
6.2    Applicants not Qualified for Endorsement
6.3    Licensure by Examination
6.4    Disabilities
6.5    Retaking Examinations
6.6    Licensure by Endorsement and Experience
6.7    Exemption
6.8    Applicants with International Education

**Part 7   Requirements for Vermont Advanced Practice Registered Nurse (APRN) Education Programs**
7.1    Eligible Colleges or Universities
7.2    Organization
7.3    Mission Statement
7.4    Program Administrator
7.5    Faculty
7.6    Curriculum Responsibilities
7.7    Curriculum Contents
7.8    Approval Process

**Part 8   Advanced Practice Registered Nurse Licensing and Practice**
8.1    Definitions
8.2    Roles
8.3    Identification
8.4    Population Focus
8.5    Scope of Practice
8.6    APRN License Requirements
8.7    Education
8.8    Certification Organizations
8.9    Education or Practice Requirement
8.10   Practice Guidelines Approval
8.11   Practice Guidelines Review
8.12   Practice Guidelines:   Availability
8.13   Practice Guidelines:   Contents
8.14   Transition to Practice:   Collaborative Provider Agreement
8.15   Collaborating Providers
8.16   Collaborating Provider Responsibilities
8.17   APRN Group Practice
8.18   License Period
8.19   Renewal Application Requirements
8.20   Refresher Course



**6.7     Exemption**      A person holding an unencumbered license in another United States jurisdiction may practice nursing in Vermont under supervision of a Vermont unencumbered licensed RN as a part of an educational offering.   Practice under this exemption shall not exceed 30 days in any calendar year.

**6.8     Applicants with International Education**      An applicant whose nursing education and current license to practice is from a country other than the United States, may take a licensing examination once the Board has received:

    (a)  a completed application for licensure;

    (b)  proof of completion of secondary school or its equivalent;

    (c)  proof of graduation from a registered nursing education program meeting the requirements of these rules;

    (d)  a credentials review by an external agency that specializes in international academic credentials review which verifies that the applicant's nursing education meets the requirements of these rules;

    (e)  proof of licensure in the country of graduation; and

    (f)   proof of oral and written English proficiency if the nursing education program was not conducted in English.

    (g)  documentation of a minimum of:
        (1)  50 days (400 hours) of practice as a licensed registered nurse in the two years immediately preceding the application; or
        (2)  120 days (960 hours) practice as a licensed registered nurse within five years of the application;

    (h)  The documents in subsections (a) through (g) above must be in the English language.

## Part   7      Requirements for Vermont Advanced Practice Registered Nurse (APRN) Education Programs

**7.1     Eligible Colleges or Universities**      The Board will approve a Vermont APRN education program which:
    (a)  is offered by a college or university;
    (b)  confers a graduate degree with a major in nursing or a graduate degree that prepares nurses to practice advanced practice nursing; and
    (c)  meets the educational standards set by a national accrediting body and national certifying board approved by the Board.

**7.2     Organization**      The relationship of the APRN education program to other units

(b)    Reasonable testing accommodations may be provided to disabled candidates when the following materials have been reviewed and approved by the Board or the examination vendor:

(1)  a letter of request from the student;

(2)  a letter from the Program Administrator of the candidate's licensed practical nursing education program.   This letter should describe accommodations and modifications made for the   applicant during the education program; and

(3)  documentation of the disability by an appropriate specialist with detailed information of accommodations needed.

**5.5    Retaking Examinations**

(a)   An applicant must submit the retake application and fee.

(b)   An applicant may retake the exam no sooner than 45 days after a previous examination attempt.

(c)   An applicant who has not successfully completed the licensing examination within five years of graduation must once again successfully complete an approved nursing education program.

(d)   Candidates who do not take a scheduled examination must reapply and submit the appropriate fee to the examination provider.

**5.6    Licensure by Endorsement and Experience**       The Board may issue a license to an applicant who:

(a)   is licensed in a United States jurisdiction on the basis of a U.S. nursing education program, and

(b)   has practiced nursing in that jurisdiction for a minimum of 50 days (400 hours) in the previous 2 years, or 120 days (960 hours) in the previous 5 years .

(c)   If there is a question about the applicant's education or practice of nursing, the board may require the applicant to provide a job description or other evidence of the required qualifications and expected job responsibilities.   The job description shall be certified as true by employers or other appropriate persons.

**5.7    Exemption**       A person   holding an unencumbered license in another United States jurisdiction may practice nursing in Vermont under supervision of a Vermont unencumbered licensed RN, as a part of an educational offering.    Practice under this exemption shall not exceed 30 days in any calendar year.

**5.8    Applicants with International Education**       An applicant whose nursing education and initial license to practice was in a country other than the United States, shall be authorized to take a licensing examination once the Board has received:

(a)   a completed application for licensure;

(c)   successfully complete the NCLEX examination for registered nursing.

(d)   Both application and successful NCLEX completion must occur within five years of the graduation date.

## 6.4   Disabilities

(a)   A candidate for examination who has a disability, as defined by the Americans with Disabilities Act, but who is otherwise qualified, shall not be deprived of the opportunity to take the licensing examination solely by reason of that disability.

(b)   Reasonable testing accommodations may be provided to disabled candidates when the following materials have been reviewed and approved by the Board or the examination vendor:
(1)   a letter of request from the student;
(2)   a letter from the Program Administrator of the candidate's registered nursing education program.   This letter should describe accommodations and modifications made for the applicant during the education program; and
(3)   documentation of the disability by an appropriate specialist with detailed information of accommodations needed.

## 6.5   Retaking Examinations

(a)   An applicant must submit a retake application and fee.

(b)   An applicant may retake the exam no sooner than 45 days after a previous examination attempt.

(c)   An applicant who has not successfully completed the licensing examination within five years of graduation must once again successfully complete an approved nursing education program.

(d)   Candidates who do not take a scheduled examination must reapply and submit the appropriate fee to the examination provider.

## 6.6   Licensure by Endorsement and Experience      The Board may issue a
 license to an applicant who:
(a)   is licensed as a registered nurse in a United States jurisdiction on the basis of a U.S. nursing education program and

(b)   has practiced nursing in that jurisdiction for a minimum of:
(1)   50 days (400 hours) in the previous 2 years; or
(2)   120 days (960 hours) in the previous 5 years.

(c)   If there is a question about the applicant's education or practice of nursing, the Board may require the applicant to provide a job description or other evidence of the required qualifications and expected job responsibilities.   The job description shall be certified as true by employers or other appropriate persons.

**Vermont Registered Nurse Verification of Education Form - Page 2**

Last Name ___*Jolly*___          First Name ___*Makeba*___          MI_____

### Summary of Theoretical Education and Clinical Practice Hours

- This information **must** be listed in hours <u>NOT</u> credits.
- If it was an integrated nursing program you must break out the hours for each course listed below.

| Clinical Area of Practice | Theory Hours | Course/Subject Title/Number (REQUIRED) | Clinical Hours | Course/Subject Title/Number (REQUIRED) |
|---|---|---|---|---|
| Adult Nursing | | | | |
| Maternal/Infant Nursing | | | | |
| Psychiatric/Mental Health Nursing | | | | |
| Pediatric Nursing | | | | |

- The following courses **can not** be combined through integrated coursework.

| Support Courses: | Theory Hours | Course/Subject Title/Number (REQUIRED) |
|---|---|---|
| Anatomy and Physiology I A + P II | 4 4 | Bio 105    A+P Bio 106    A+P |
| Microbiology | 4 | Bio 215 - Micro |
| Humanities | 3 3 3 | French Eng. 2H - Survey of African Amer Lit HH - Western Civ |
| Social/Behavioral Science | 3 3 3 | Soc - Principles of Soc Poc - Political Scien Suc 102 - Sociology of the Family |

| Was the language of instruction and textbooks for the nursing program taught in English? | YES     NO |
|---|---|

| Print Name | *Bobra Theuria* | Date | 5/5/18 |  |
|---|---|---|---|---|
| Position/Title | *Team coordinator* | Telephone | 386-405-5000 (471) ext | Official School Seal/Stamp |
| | | Email | rtheuria@college.ed | |
| Signature of Dean/Director | | | | |

**Return to:** Vermont Board of Nursing, 89 Main St, 3rd Floor, Montpelier, VT 05620-3402

7



# Student AcademicTranscript

Feb 09, 2018 03:18 pm

This is not an official transcript. Courses which are in progress may also be included on this transcript.

Information for Maketa S. Jolly
Transfer Credit   Institution Credit   Transcript Totals

***Transcript Data***
**STUDENT INFORMATION**

**Name :** Maketa S. Jolly
**Curriculum Information**

**Current Program**
**Program:** AA - Arts & Sciences
**Major and Department:** Arts & Sciences, Arts & Sciences

\*\*\*Transcript type:UNOF Unofficial Transcript is NOT Official \*\*\*

**DEGREE AWARDED**

**Awarded:** Associate in Arts   **Degree Date:** Jan 23, 2015
**Curriculum Information**

**Primary Degree**
**Program:** AA - Arts & Sciences
**Major:** Arts & Sciences

**Sought:** Associate in Science   **Degree Date:**
**Curriculum Information**

**Primary Degree**
**Program:** AS Arts & Science (AS)
**Major:** Arts & Sciences

**TRANSFER CREDIT ACCEPTED BY INSTITUTION**   **-Top-**

Fall 2001:  Salem Community College

| Subject | Course | Title | Grade | Credit Hours | Quality Points | R |
|---------|--------|-------|-------|-------------|----------------|---|

 **Southern New Hampshire University**

Office of the University Registrar – Transcripts
Exeter Hall
2500 North River Road
Manchester, NH 03106
603.668.2211 ext. 2297
transcripts@snhu.edu

To:     Maketa S Jolly                                    15-Mar-2016

Re:     Transcript of:     Maketa Jolly

        Request Number:  9268966

        It is not permissible to replicate this transcript or forward it to any person or organization other than the identified recipient.

## Southern New Hampshire University
### Statement of Authenticity

This official transcript has been transmitted electronically to the recipient, and is intended solely for use by that recipient.  If you are not the intended recipient, please notify the Transcript Department at Southern New Hampshire University.  It is not permissible to replicate this document or forward it to any person or organization other than the identified recipient.  Release of this record or disclosure of its contents to any third party without written consent of the record owner is prohibited.

This official transcript has been digitally signed and therefore contains special characteristics.  If this document has been issued by Southern New Hampshire University, and for optimal results, we recommend that this document is viewed with the latest version of Adobe® Acrobat or Adobe® Reader; it will reveal a digital certificate that has been applied to the transcript.  This digital certificate will appear in a pop-up screen or status bar on the document, display a blue ribbon, and declare that the document was certified by Southern New Hampshire University with a valid certificate issued by GeoTrust CA for Adobe®.  This document certification can be validated by clicking on the Signature Properties of the document.

 The blue ribbon symbol is your assurance that the digital certificate is valid, the document is authentic, and the contents of the transcript have not been altered.

 If the transcript does not display a valid certification and signature message, reject this transcript immediately.  An invalid digital certificate display means either the digital signature is not authentic, or the document has been altered.  The digital signature can also be revoked by the transcript office if there is cause, and digital signatures can expire.  A document with an invalid digital signature display should be rejected.

 Lastly, one other possible message, Author Unknown, can have two possible meanings: The certificate is a self-signed certificate or has been issued by an unknown or untrusted certificate authority and therefore has not been trusted, or the revocation check could not complete. If you receive this message make sure you are properly connected to the internet.  If you have a connection and you still cannot validate the digital certificate on-line, reject this document.

The transcript is the last page of this document.

The current version of Adobe® Reader is free of charge, and available for immediate download at http://www.adobe.com.

If you require further information regarding the authenticity of this transcript, you may email or call the Office of the University Registrar at Southern New Hampshire University at transcripts@snhu.edu or 603.668.2211 ext. 2297.

Maketa Jolly
STUDENT ID:
D.O.B.:
SSN: XXX-XX-5

03/15/2016

Brookhaven PA 19015

PROGRAM: BA General Studies ++

| Course | Title | CRD | GRD | GRDPT |
|--------|-------|-----|-----|-------|
| **GRAND CANYON UNIVERSITY** | | | | |
| GEN-ELE | General Elective | 3.00 | T | 0.00 |
| GEN-ELE | General Elective | 1.00 | T | 0.00 |
| PHL-ELE | Philosophy Elective | 3.00 | T | 0.00 |
| PHL-ELE | Philosophy Elective | 1.00 | T | 0.00 |
| | | | | |
| **ROWAN COLLEGE AT GLOUCESTER COUNTY** | | | | |
| BIO-210 | Intro to Anatomy & Physiology | 3.00 | T | 0.00 |
| BIO-210L | Anatomy and Physiology Lab | 1.00 | T | 0.00 |
| BIO-ELE | Biology Elective | 3.00 | T | 0.00 |
| BIO-ELE | Biology Elective | 1.00 | T | 0.00 |
| BIO-ELE | Biology Elective | 3.00 | T | 0.00 |
| BIO-ELE | Biology Elective | 1.00 | T | 0.00 |
| COM-212 | Public Speaking | 3.00 | T | 0.00 |
| FAS-ELE | Fine Arts Elective | 3.00 | T | 0.00 |
| HCM-205 | Medical Terminology | 3.00 | T | 0.00 |
| HIS-109 | Western Civilization to 1500 | 3.00 | T | 0.00 |
| HIS-114 | U.S. History II: 1865-Present | 3.00 | T | 0.00 |
| LFR-111 | Beginning French I | 3.00 | T | 0.00 |
| LIT-350 | The Black Literary Tradition | 3.00 | T | 0.00 |
| POL-ELE | Political Science Elective | 3.00 | T | 0.00 |
| SOC-112 | Introduction to Sociology | 3.00 | T | 0.00 |
| SOC-317 | Sociology of the Family | 3.00 | T | 0.00 |
| | | | | |
| **SALEM COMMUNITY COLLEGE** | | | | |
| BIO-101 | General Biology | 3.00 | T | 0.00 |
| BIO-ELE | Biology Elective | 1.00 | T | 0.00 |
| HTH-ELE | Health Elective | 3.00 | T | 0.00 |
| HTH-ELE | Health Elective | 3.00 | T | 0.00 |
| NUR-ELE | Healthcare Elective | 3.00 | T | 0.00 |
| NUR-ELE | Healthcare Elective | 3.00 | T | 0.00 |
| NUR-ELE | Healthcare Elective | 3.00 | T | 0.00 |
| NUR-ELE | Healthcare Elective | 3.00 | T | 0.00 |
| NUR-ELE | Healthcare Elective | 3.00 | T | 0.00 |
| NUR-ELE | Healthcare Elective | 3.00 | T | 0.00 |
| PHL-212 | Introduction to Ethics | 3.00 | T | 0.00 |
| PHL-ELE | Philosophy Elective | 1.00 | T | 0.00 |
| PSY-211 | Lifespan Development | 3.00 | T | 0.00 |
| SCI-ELE | Science Elective | 3.00 | T | 0.00 |
| | | | | |
| **WESLEY COLLEGE DE** | | | | |
| ENG-120 | College Composition I | 3.00 | T | 0.00 |
| OL-110 | Introduction to Business | 3.00 | T | 0.00 |

| Course | Title | CRD | GRD | GRDPT |
|--------|-------|-----|-----|-------|
| **WINTER 2014** | | | | |
| MKT-113 | Introduction to Marketing | 3.00 | B- | 8.01 |
| OL-125 | Human Relations in Admin | 3.00 | B+ | 9.99 |
| Term Credits: 6.00 Term GPA: 3.000 | | | | |
| GPA Credits: 6.00 Cum GPA: 3.000 | | | | |
| Degree Credits: 103.00 | | | | |
| | | | | |
| **SUMMER 2014** | | | | |
| BUS-206 | Business Law I | 3.00 | C+ | 6.99 |
| IND-201 | Self-Designed Degree Prog Plan | 3.00 | A | 12.00 |
| IT-210 | Business Systems Analysis/Dsn | 3.00 | C+ | 6.99 |
| MAT-135 | The Heart of Mathematics | 3.00 | C | 6.00 |
| Term Credits: 12.00 Term GPA: 2.665 | | | | |
| GPA Credits: 18.00 Cum GPA: 2.777 | | | | |
| Degree Credits: 115.00 | | | | |
| | | | | |
| **FALL 2014** | | | | |
| IT-100 | Introduction to Info Tech | 3.00 | B | 9.00 |
| IT-145 | Intro to Software Development | 3.00 | A | 12.00 |
| IT-220 | Introduction to SQL | 0.00 | W | 0.00 |
| IT-330 | Database Design and Management | 3.00 | B | 9.00 |
| Term Credits: 9.00 Term GPA: 3.333 | | | | |
| GPA Credits: 27.00 Cum GPA: 2.962 | | | | |
| Degree Credits: 124.00 | | | | |
| | | | | |
| **WINTER 2015** | | | | |
| ENG-123 | English Composition II | 3.00 | B+ | 9.99 |
| IDS-400 | Diversity | 3.00 | A- | 11.01 |
| Term Credits: 6.00 Term GPA: 3.500 | | | | |
| GPA Credits: 33.00 Cum GPA: 3.060 | | | | |
| Degree Credits: 130.00 | | | | |

  Bachelor of Arts Conferred April 1, 2015
  Major - General Studies
  Specialization - Individual Theme

- End of Undergraduate Record -

Southern New Hampshire University

Jennifer Ligenza, University Registrar

```
Maketa Jolly                                                              PAGE 1 OF 1
STUDENT ID: ███████
D.O.B.: ███████                                                          03/15/2016
SSN: XXX-XX-5███
```

Brookhaven PA 19015

PROGRAM: M.Ed. Curriculum Instruction w/conc in Technology ++

| Course | Title | CRD | GRD | GRDPT | Course | Title | CRD | GRD | GRDPT |
|--------|-------|-----|-----|-------|--------|-------|-----|-----|-------|

```
FALL 2015
EDU-547    Curriculum Development       3.00    B-    8.01
Term Credits:      3.00   Term GPA: 2.670
GPA Credits:       3.00   Cum GPA:  2.670
Degree Credits:    3.00

WINTER 2016
EDU-555    Student Centered Curric/Instr  0.00   F    0.00
EDU-610    Ethics and School Law          0.00   F    0.00
Term Credits:      6.00   Term GPA: 0.000
GPA Credits:       9.00   Cum GPA:  0.890
Degree Credits:    3.00

- End of Graduate Record -
```

Southern New Hampshire University

Jennifer Ligenza, University Registrar

## ACCREDITATION and MEMBERSHIP
- New England Association of Schools and Colleges
- New Hampshire Postsecondary Education Commission
- Additional Program Accreditation and Membership information is available on the expanded transcript key*.

## CALENDAR and CREDIT
SNHU has multiple term structures, including traditional semesters and accelerated formats. The unit of credit at Southern New Hampshire University is the semester hour.

## COURSE LEVELS
Courses numbered 001-499 are offered at the undergraduate level, with lower division numbers in the 100 and 200 levels normally taken in the freshman and sophomore years. Upper division courses in the 300 and 400 levels are normally taken by juniors and seniors. Graduate level courses are numbered from 500-799. Doctoral courses are numbered at the 800-plus level.

## COURSE TYPE INDICATORS
- Courses with an "H" after the course number are honors courses.
- Courses with an "I" after the course number are International student courses.
- Courses with a course code prefix of "PD" are Professional Development courses.
- Courses with the acronym "NHCUC" in the title were taken through the New Hampshire College and University Council.
- Courses with the acronym  of "OCICU" in the title were taken through the Online Consortium of Independent Colleges and Universities.

## HONORS
### Academic Honors (full-time undergraduate students)
As of June 1, 2013:
| | |
|---|---|
| Dean's List | 3.500 to 3.699 |
| President's List | 3.700 and above |

Prior to June 1, 2013:
| | |
|---|---|
| Dean's List | 3.000 to 3.499 |
| President's List | 3.500 and above |

### Graduation Honors (Associate's / Bachelor's)
As of October 1, 2013:
| | |
|---|---|
| Honors / Cum Laude | 3.500 - 3.699 |
| High Honors / Magna Cum Laude | 3.700 - 3.849 |
| Highest Honors / Summa Cum Laude | 3.850 - 4.000 |

Prior to October 1, 2013:
| | |
|---|---|
| Honors / Cum Laude | 3.000 - 3.499 |
| High Honors / Magna Cum Laude | 3.500 - 3.799 |
| Highest Honors / Summa Cum Laude | 3.800 - 4.000 |

## INSTITUTIONAL NAME CHANGE
On July 1, 2001, New Hampshire College became Southern New Hampshire University.

## PROGRAM INFORMATION
Program information is recorded at the top left of the transcript for up to two programs from which the student is active, has withdrawn, or has graduated. The degree, major(s), minor(s), and concentration(s)/specialization(s) are listed subject to a maximum character length. Program conferrals are recorded within the body of the transcript, after the semester in which the degree/certificate was conferred.

## GRADING SYSTEM
### Grade Point Average (GPA):
The GPA is determined by dividing the sum of the quality points (GRDPT) earned at Southern New Hampshire University by the sum of the attempted semester credit hours.

| GRADE | DEFINITION | QUALITY POINTS | IN GPA CALCULATION? |
|---|---|---|---|
| A | Excellent | 4.00 | Yes |
| A- | | 3.67 | Yes |
| B+ | | 3.33 | Yes |
| B | Good | 3.00 | Yes |
| B- | | 2.67 | Yes |
| C+ | | 2.33 | Yes |
| C | Average | 2.00 | Yes |
| C- | | 1.67 | Yes |
| D+ | | 1.33 | Yes |
| D | Passing | 1.00 | Yes |
| F | Fail | 0.00 | Yes |
| IF | Incomplete Fail | 0.00 | Yes |
| UF | Unearned Fail | 0.00 | Yes |
| I | Incomplete | N/A | No |
| AU | Audit | N/A | No |
| CR | Credit | N/A | No |
| IP | In Progress Passing | N/A | No |
| IPT | In Progress Transfer | N/A | No |
| MA | Mastery | N/A | No |
| NG | Non-graded | N/A | No |
| P | Pass | N/A | No |
| S | Satisfactory | N/A | No |
| T | Transfer Credit | N/A | No |
| U | Unsatisfactory | N/A | No |
| W | Withdrawal | N/A | No |
| WF | Withdrawal - Failing | N/A | No |
| WP | Withdrawal - Passing | N/A | No |
| WV | Course Waived | N/A | No |

## Academic Renewal Grades:
Students who change majors/programs or withdraw and return may apply for academic renewal. This allows students to be considered as transferring from another institution. Grades prefaced by "R" denote academic renewal (i.e. "RC-" will appear for a course eligible for academic renewal with a final grade of "C-".)

## Incomplete "I"/ Incomplete Fail "IF" Grades:
An Incomplete "I" grade automatically becomes an Incomplete Fail "IF" grade if work has not been completed and a grade has not been submitted prior to the pre-determined expiration date.

## In Progress Passing "IP" Grades:
"IP" grades are issued for internships, practicums, and courses that span more than one academic term. The "IP" grade indicates the student is passing as of term end. Unresolved "IP" grades will automatically become a failing "F" grade.

## Mastery "MA" Grades:
"MA" grades are issued for competency-based programs once individual competencies are mastered. "MA" is equivalent to an "A" grade on a traditional grade scale.

## Pass "P" and Satisfactory "S" Grades:
Pass "P" and Satisfactory "S" grades are defined as a "C" or better at the undergraduate level and a "B" or better at the graduate level.

## Repeated Course "R":
A student may repeat a course for credit. The last grade, whether it is higher than, the same as, or lower than the first grade is included in the Cumulative GPA; the first grade is excluded. In instances where both grades are passing, credit is only earned once. "R" appears to the right of the GRDPT column of the repeated course.

## Satisfactory "S"/Unsatisfactory "U" Grades:
An "S/U" option is available in some courses to students in lieu of letter grades. A satisfactory grade may be applied toward fulfilling degree credits, but will not be applied toward the quality point average. The Master of Fine Arts program utilizes only "S/U" grades.

## Unearned Fail "UF" Grades:
A "UF" grade replaces a final grade of "F" in each course for any student who ceased participation in graded activities for all courses before the midpoint of the term.

*For an expanded version of the transcript key, please visit the Office of the University Registrar's web page:
http://www.snhu.edu/606.asp

TO TEST FOR AUTHENTICITY: Translucent globe icons MUST be visible from both sides when held toward a light source.  The face of this transcript is printed on blue SCRIP-SAFE® paper with the name of the institution appearing in white type over the face of the entire document.

SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE UNIVERSITY • SOUTHERN NEW HAMPSHIRE

ADDITIONAL TESTS: The institutional name and the word COPY appear o. When this paper is touched by fresh liquid bleach, an authentic document will stain brown. A black and white or color copy of this document is not an original and should not be accepted as an official institutional document. This document cannot be released to a third party without the written consent of the student. This is in accordance with the Family Educational Rights and Privacy Act of 1974.  If you have any questions about this document, please contact our office.  ALTERATION OF THIS DOCUMENT MAY BE A CRIMINAL OFFENSE!

14185014                            last revised 07/08/15                                                        SCRIP-SAFE® Security Products, Inc. Cincinnati, OH

# EXCELSIOR COLLEGE®

↗ EXCELSIOR.EDU

June 13, 2018


Vermont Board of Nursing
89 Main Street
Third Floor
Montpelier, VT 0560-3402

To Whom It May Concern:

Maketa Jolly is requesting that additional information be provided to the application that we sent on March 23, 2018.

Attached is the curriculum analysis of the nursing education components she completed.  This information was not included on the application for Clinical Area of Practice for the theory section.

Kind regards,

Donna Kerschner

Donna Kerschner
State Board Coordinator


cc:  Maketa Jolly


Enc.  Curriculum Analysis

**Excelsior College School of Nursing**
**Associate Degree in Nursing Program**

**Curriculum Analysis of the Nursing Education Component**

**Essentials and Health Differences Examination Series**

The theoretical component of this version of our program consists of 24 credit hours, that is, eight, 3 credit hour examinations covering content in medical, surgical, pediatric, obstetrical and psychiatric nursing content with application of nursing process and developmental theories to individuals **across the lifespan** in each examination. We do not have separate examinations for Adult, Maternal, Pediatric, Psychiatric/Mental Health, Community/Public Health or Gerontological nursing.

The recommendation by the American Council on Education (ACE) to grant 3 credits for successful completion of each of the theory examination is based on the fact that to earn these credits for an equivalent on-campus course, students would be expected to spend at least 135 hours attending classes and doing out-of-class assignments. The total classroom hour equivalent for the theory component of the curriculum is 1080 hours.

The content breakdown for each **nursing theory examination** is as follows:

**NURX*104 - Essentials of Nursing Care: Health Safety** (3 Credits)

| | |
|---|---|
| Nursing Process | 10% |
| Health, Wellness and Illness | 20% |
| Environmental Safety | 15% |
| Biological Safety | 20% |
| Medication Safety | 15% |
| Psychological Safety | 20% |

**NURX*105 - Essentials of Nursing Care: Health Differences** (3 Credits)

| | |
|---|---|
| Nutrition | 20% |
| Elimination | 15% |
| Oxygenation | 20% |
| Fluid and Electrolyte Balance | 30% |
| Activity/Mobility | 10% |
| Sleep | 5% |

**NURX*106 - Essentials of Nursing Care: Chronicity** (3 Credits)

| | |
|---|---|
| Functional Assessment | 10% |
| Comfort | 10% |
| Pain | 10% |
| Chronic Illness | 10% |
| End of Life Care | 20% |
| Sensory Impairments | 20% |
| Culture and Diversity | 10% |
| Community-Based Nursing Care | 10% |

**NURX*107 - Essentials of Nursing Care: Reproductive Health** (3 Credits)

| | |
|---|---|
| Human Sexuality | 10% |
| Needs of the Childbearing Family: | |
| Preconception | 5% |
| Antepartal Period | 10% |
| Intrapartal Period | 15% |
| Postpartal Family | 25% |
| Congenital Anomalies, Genetic Disorders, | |
| and Developmental Problems | 20% |
| Reproductive Disorders | 15% |

**NURX*211 - Health Differences Across the Life Span 1** (3 Credits)

| | |
|---|---|
| Cardiovascular Problems | 33% |
| Respiratory Problems | 33% |
| Abnormal Cellular Growth | 34% |

**NURX*212 - Health Differences Across the Life Span 2** (3 Credits)

| | |
|---|---|
| Behavioral Responses | 40% |
| Cognitive Assessment | 10% |
| Regulatory Mechanisms | 25% |
| Metabolic Mechanisms | 25% |

**NURX*213 - Health Differences Across the Life Span 3** (3 Credits)

| | |
|---|---|
| Infectious & Communicable Disease | 25% |
| Tissue Trauma | 25% |
| Neurological Dysfunction | 25% |
| Musculoskeletal Dysfunction | 25% |

**NURX*214 - Transition to the RN Professional Role** (3 Credits)

| | |
|---|---|
| Forces Influencing the Development | |
| of the Nursing Profession | 15% |
| Health Care Delivery System and | |
| Community-Based Practice | 20% |
| Framework for Nursing Practice | 35% |
| Nursing Profession: Roles & | |
| Responsibilities | 30% |

2

 Gmail

**Keta Jolly <keta814@gmail.com>**

## Vermont Application

**Lavoie, Michelle** ⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤                    Wed, Mar 14, 2018 at 10:09 AM
To: Keta Jolly ⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤⬤

We will need verification of education forms and transcripts from the schools where you took the following.

**4.30 Registered Nursing Programs** A registered nursing program shall include content in pharmacology and nutrition. Each program must provide no less than:

(a) 180 theory hours and 400 clinical hours covering the following:

(1) Adult Nursing;

(2) Maternal/Infant Nursing;

(3) Pediatric Nursing;

(4) Psychiatric/Mental Health Nursing.

(b) 80 hours in Anatomy and Physiology;

(c) 40 hours in Microbiology;

(d) 80 hours covering both Humanities and Social/Behavioral Science.

[Quoted text hidden]

 Gmail

**Keta Jolly <keta814@gmail.com>**

## Vermont Application

**Lavoie, Michelle** ⟨̶m̶i̶c̶h̶e̶l̶l̶e̶.̶l̶a̶v̶o̶i̶e̶@̶s̶e̶c̶.̶s̶t̶a̶t̶e̶.̶v̶t̶.̶u̶s̶⟩           Wed, Mar 14, 2018 at 10:37 AM
To: Keta Jolly <keta814@gmail.com>

Please call to discuss.


*Michelle Lavoie*

Michelle Lavoie, Licensing Administrator I

Vermont Board of Nursing

89 Main Street, 3rd Floor,

Montpelier, Vermont  05620-3402

Phone 802-828-2396

Fax 802-828-2484

http://vtprofessionals.org/opr1/nurses



**From:** Keta Jolly [mailto:keta814@gmail.com]
**Sent:** Wednesday, March 14, 2018 10:35 AM
**To:** Lavoie, Michelle <michelle.lavoie@sec.state.vt.us>
**Subject:** Re: Vermont Application


Hello,


I have provided you with the transcript with A&P and Micro completed, they were not taken at my nursing school. That is the purpose for the question


On Wed, Mar 14, 2018 at 10:09 AM, Lavoie, Michelle <michelle.lavoie@sec.state.vt.us> wrote:

> We will need verification of education forms and transcripts from the schools where you took the following.
>
>
> **4.30 Registered Nursing Programs** A registered nursing program shall include content in pharmacology and nutrition. Each program must provide no less than:

 Gmail

**Keta Jolly <keta814@gmail.com>**

---

## Vermont Application

---

**Lavoie, Michelle ⟨▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓⟩**                Wed, Mar 14, 2018 at 9:23 AM
To: Keta Jolly ⟨▓▓▓▓▓▓▓▓▓▓▓▓▓⟩

Hi Maketa,

I have attached the form for your convenience.

*Michelle Lavoie*

Michelle Lavoie, Licensing Administrator I

Vermont Board of Nursing

89 Main Street, 3rd Floor,

Montpelier, Vermont 05620-3402

Phone 802-828-2396

Fax 802-828-2484

http://vtprofessionals.org/opr1/nurses

[Quoted text hidden]

 **RN-Verification-of-Education.pdf**
30K

---

 Gmail

**Keta Jolly <keta814@gmail.com>**

## Vermont Application

**Lavoie, Michelle** <~~~~~~~~~~~~~~~~~~~~~~~>                    Wed, Mar 14, 2018 at 6:10 AM
To: "Keta814@gmail.com" <~~~~~~~~~~~~~~~~~>

Hi Maketa,

I received your transcripts from Southern NH University.  I'm still waiting for the verification of education.

*Michelle Lavoie*

Michelle Lavoie, Licensing Administrator I

Vermont Board of Nursing

89 Main Street, 3rd Floor,

Montpelier, Vermont  05620-3402

Phone 802-828-2396

Fax 802-828-2484

http://vtprofessionals.org/opr1/nurses

 **Gmail**

**Keta Jolly <keta814@gmail.com>**

## FW: information provided to the VT Board

**Lavoie, Michelle** ~~███████████████~~      Mon, Jun 18, 2018 at 11:58 AM
To: Keta Jolly ~~██████████~~

I cannot except this.  They need to complete the verification of education form which I have attached.


*Michelle Lavoie*

Michelle Lavoie, Licensing Administrator I

Vermont Board of Nursing

89 Main Street, 3rd Floor,

Montpelier, Vermont  05620-3402

Phone 802-828-2396

Fax 802-828-2484

http://vtprofessionals.org/opr1/nurses

[Quoted text hidden]

📄 **RN-Verification-of-Education.pdf**
    30K

New
Jersey
Fact finding
evidence
Submitted for review

→

# MAKETA S. JOLLY

Date of birth: ███████████
Date of death:
License No.: **26NP07591600**
Profession: Nursing
License type: Licensed Practical Nurse

License status: **Active**          Last renewal date:
Date this status: 12/06/2017      Expiration date: 05/31/2019
Issue date: 12/06/2017

**Address of Record**
███████████████
Morton, PA 19070

**Education**
School name: Salem Community College
Degree/Certificate: Diploma
Date Graduated: 08/01/2002
Major: Nursing

School name: Rowan @ Gloucester County College
Degree/Certificate: Associate Degree
Date Graduated: 05/01/2011
Major:

School name: Southern New Hampshire
Degree/Certificate: Bachelor of Arts
Date Graduated: 05/01/2015
Major:

**Prerequisite License(s)**
None

_(handwritten annotations:)_
✓ information provided to New Jersey upon application for endorsement

✱ Please note! Excelsior College is not listed as an Educator/Institution

Board of New Jersey database nurses

Report generated on 11/19/18 9:05:54 AM

at all times relevant hereto. Her current licensure status is active. (Exhibit A; licensure information).

2. On May 9, 2017, Respondent was licensed in New Jersey as a Registered Nurse (RN) in error. Respondent remained licensed as an RN until the error was discovered when the Pennsylvania Board of Nursing contacted the New Jersey Board of Nursing to verify her NJ license as a result of having received Respondent's application for an RN license in Pennsylvania. (Exhibit B; Nursys Speed Memos for New Jersey).

3. On December 6, 2017, Respondent's NJ RN license was made null and void. (Exhibit C; licensure information). On the same day, she was issued an LPN license. Respondent was contacted and instructed to return the RN license. Respondent returned the wallet size copy of her RN license on January 10, 2018, but not the wall certificate.

4. On July 31, 2018, the Board of Nursing was informed that Respondent had attempted to obtain an RN license in Vermont. Respondent advised the Vermont Board of Nursing that she graduated from Excelsior College's School of Nursing with an associate degree from the registered nurse program in 2014. (Exhibit D; Respondent's letter regarding Vermont application).

5. On August 15, 2018, a representative from Excelsior College confirmed that Respondent had attended the Excelsior

Page 2 of 7

*Board of New Jersey fact finding* [handwritten]

College, but did not graduate. This representative also advised that multiple State Boards of Nursing had recently contacted Excelsior College regarding Respondent's education. (Exhibit E; Excelsior College letter).

6. On August 24, 2018, the Board obtained information indicating that Respondent in May 2017, immediately after she was licensed in error as an RN, sought and obtained employment as an RN at Arista Care at Cherry Hill. Respondent worked as an RN at Arista Care at Cherry Hill through November 2017. (Exhibit F; employment application and payroll information).

## CONCLUSIONS OF LAW

The Board finds that Respondent engaged in the use or employment of dishonesty, fraud, deception, or misrepresentation in contravention of N.J.S.A. 45:1-21(b) by falsely stating that she had graduated from Excelsior College's Registered Nurse program in 2014.

Pursuant to N.J.S.A. 45:11-26, a professional nurse must completed a course of professional nursing study in an accredited school of professional nursing as defined by the Board and hold a diploma therefrom to obtain licensure as an RN.

Respondent engaged in the practice of nursing as an RN without the requisite education and skill which constitutes professional misconduct, in violation of N.J.S.A. 45:1-21 (e)

which in turn subjects Respondent to sanctions pursuant to N.J.S.A. 45:1-21 (h).

The parties agreeing to resolve this matter, Respondent waiving any right to a hearing, the Board finding that the within Order is sufficiently protective of the public health, safety and welfare, in lieu of further proceedings, and for other good cause shown;

ACCORDINGLY, IT IS on this 6th day of December, 2018, ORDERED that upon the filing of a FINAL ORDER OF DISCIPLINE in this matter, the Findings of Fact and Conclusions of Law above shall be deemed final, and the following sanctions shall be imposed:

1. Respondent's license to practice nursing in the State of New Jersey as a LPN shall be suspended for a period of five (5) years to be served as an active suspension.

2. Respondent shall refrain from practicing as a nurse and shall not represent herself as a nurse until such time as her license is reinstated. Any practice in this State prior to reinstatement shall constitute grounds for a charge of unlicensed practice.

3. Respondent is assessed a civil penalty in the amount of five thousand dollars ($5,000). Payment shall be made by certified check, bank cashier check, or money order payable to



THE STATE OF NEW JERSEY
DEPARTMENT OF LAW & PUBLIC SAFETY
DIVISION OF CONSUMER AFFAIRS

NJHome I Services A to Z I Departments/Agencies I FAQs



OAG Home | OAG Services from A - Z ▼

OAG Contact | DIVISION OF CONSUMER AFFAIRS



OAG Home
Steve C. Lee
Director

## License Information

### Accurate as of May 30, 2017 10:16 AM

[ Return to Search Results ]

**Name:** MAKETA S. JOLLY

**Address:** Brookhaven,PA

**Profession/License Type:** Nursing,Registered Prof. Nurse

**License No:** 26NR19294200

**License Status:** Active

**Status Change Reason:** License Issuance

**Issue Date:** 5/9/2017

**Expiration Date:** 5/31/2019

| Board Action: No |
| --- |

For discipline information prior to January 01, 2010 please contact the Board of Nursing via bondisciplineinquiry@dca.lps.state.nj.us

**From:** Deborah Zuccarelli

**Sent:** Wednesday, August 22, 2018 9:01 PM

**To:** Laurie Goodman <GoodmanL@dca.lps.state.nj.us>

**Subject:** Maketa Jolly

Hi Laure,

I need a Department of Labor run on this nurse, it's kind of important. She was issued an RN license in error, she is an LPN. I want to try and find out if she worked as an RN for any period of time. If I know where she worked, I can call them.

Maketa Jolly

Excelsior

College

Exhibits



excelsior.edu

7 Columbia Circle, Albany, New York 12203-5159

Phone:  | toll free 888-647-2388 or 518-464-8500

TDD:  | 518-464-8501

Fax:  | 518-464-8777

PRO 19-238426, rev. 4/2019

The "unearned" portion of the aid that was disbursed directly to the student will also be calculated. If applicable, the student will owe a repayment to the Title IV student financial aid programs. The student will be sent an overpayment letter by the Bursar's Office and will be given 45 days to make the repayment. The student will be ineligible for further Title IV student financial aid until the funds are repaid or satisfactory payment arrangements have been made with the Department of Education.

Repayment of a State Need Grant is also calculated for any student completing 60 percent or less of the hours in a given payment period.

For a student who withdraws after the 60 percent point-in-time, there are no unearned funds. However, Excelsior College will still complete a *Return Calculation* in order to determine whether the student is eligible for a post-withdrawal disbursement.

The calculation of federal student financial aid funds earned by the student is a separate from and has no relationship to institutional charges incurred by the student. Any over/under payment of institutional charges will be handled in accordance with the College's institutional refund policy.

### Refunds for Financial Aid Recipients Who Do Not Receive Title IV Federal Student Financial Aid

Refunds for financial aid recipients who do not receive Title IV federal student financial aid will be issued in accordance with the College's institutional refund policy, as stated in the Excelsior College policy for **Fee Refunds**.

Distribution of refunds, repayments, and return of Title IV federal student financial aid funds by the Bursar's Office will be done in the following order:

- ■ Federal Family Education Loan Programs
- ■ Federal Pell Grant
- ■ ACG and SMART Grants
- ■ State Need Grant
- ■ Other programs providing aid

# Privacy Rights

## Family Educational Rights and Privacy Act (FERPA)

Excelsior College complies with the Family Educational Rights and Privacy Act (FERPA). This Act affords students over 18 years of age ("eligible students") certain rights, with respect to their education records.

They are:

1. The right to inspect and review the student's education records within 45 days of the day the College receives a request for access. Students should submit to the Office of the Registrar a signed written request that identifies the record(s) they wish to inspect. The Office of the Registrar will make arrangements for access and notify the student of the time and place where the records may be inspected. If the records requested are not maintained by the College, the Office of the Registrar shall advise the student of that fact.

2. The right to request the amendment of the student's education records that the student believes are inaccurate or misleading. Students may ask the College to amend a record that they believe is inaccurate or misleading. They should write the Office of the Registrar, clearly

identifying the part of the record they want changed, and specify why it is inaccurate or misleading. If the College decides not to amend the record as requested by the student, the College will notify the student of the decision and advise the student of his or her right to a hearing regarding the request for amendment. Additional information regarding the hearing procedures will be provided to the student when notified of the right to a hearing.

3. The right to consent to disclosures of personally identifiable information contained in the student's education records, except to the extent that FERPA authorizes disclosure without consent. In accordance with the Act, the following directory information will be released upon a signed written request unless a written notice to the contrary is received by the Excelsior College Office of the Registrar: name, address (permanent, mail, temporary, and email), telephone number, degree program and concentration, major area of study, dates of attendance, degrees and awards received, and date and place of birth. An exception that permits disclosure without consent is disclosure to school officials with legitimate educational interests. A school official is a person employed by the College in an administrative, supervisory, academic or research, or support staff position (including law enforcement unit personnel and health staff); a person or company with whom the College has contracted (such as an attorney, auditor, or collection agent); a person serving on the Excelsior College Board of Trustees; or a student serving on an official committee, such as a disciplinary or grievance FERPA committee, or assisting another school official in performing his or her tasks. A school has a legitimate educational interest if the official needs to review an education record in order to fulfill his or her professional responsibility.

4. The right to file a complaint with the U.S. Department of Education concerning alleged failures by the College to comply with FERPA. The name and address of the office that administers FERPA is:

> Family Policy Compliance Office
> U.S. Department of Education
> 400 Maryland Avenue SW
> Washington, DC 20202-5920

Students who would like a copy of the Excelsior College Family Educational Rights and Privacy Act compliance policy can receive this information by writing to Excelsior College, The Office of the Registrar, 7 Columbia Circle, Albany, New York 12203-5159.

Excelsior College is committed to providing a learning environment that is free from illegal discrimination based upon an individual's race, ethnicity, national origin, age, religion, gender, sexual orientation, physical or mental disability, or veteran status in the educational programs and activities which it operates. This policy is in compliance with Title IX of the Educational Amendments of 1971.

## Right to Access

With a few exceptions as provided by law, students may see any of their educational records upon request. Access will be granted upon written request to the Office of the Registrar. In some cases, students are also entitled to copies (at their own expense) of all records to which they have access. Students have the right, under established procedures, to challenge the factual accuracy of the records and to enter their viewpoints in the records.

Students may waive their right to access recommendations and evaluations in the cases of applications for employment and application to other colleges and universities that have been placed in their educational records.

© 2018 Excelsior College. All rights reserved.

112



## Listing of Education Records

At Excelsior College, the permanent record and official file for each student is maintained by the Office of the Registrar. The file contains copies of documents relating to the student. It may also include information supplied to the College, copies of transcripts for academic work completed, and copies of letters related to academic or disciplinary action taken against the student.

Other offices may hold such information as is necessary to provide services or assistance to students or for the administration of various programs. Incidental and/or official files may also be kept by academic advisors, other staff members, and academic deans.

## Disclosure of Student Records

With several exceptions, identified in the following paragraphs, the College cannot release information concerning students to prospective employers, government agencies, credit bureaus, or other third parties without the written consent of the eligible student. Students and alumni applying for jobs, credit, graduate school, etc., must provide the College with signed and dated written consents to release their records, specifying the records that may be disclosed, the purpose of the disclosure, and the party or class of parties to whom disclosure may be made.

The College has designated the following categories of information as "directory information," which, at the College's discretion, may be released without consent of the student: student's name, address, telephone number, degree program and degree (major area of study), dates of attendance, degrees and awards received, date and place of birth.

A student may request that directory information not be released without his or her written consent. Such requests must be submitted in writing to the Office of the Registrar and must include the student's name, address, student identification number, date, and signature.

Excelsior College accords to its students all rights under this law. No one outside the institution shall have access to students' educational records, nor will Excelsior College disclose any information from these records without the written consent of students except, in accordance with the Act,

1. To personnel within the institution or appropriate officials of the colleges and universities in which the student seeks to enroll;

2. To persons or organizations providing student financial aid;

3. To accrediting agencies carrying out their accreditation function;

4. To persons in compliance with a judicial order or a lawfully issued subpoena (provided that the College will first make a reasonable attempt to notify the student);

5. To organizations conducting studies to develop, validate, and administer predictive tests, to administer student aid programs, or to improve instruction;

6. To authorized representatives of federal or state government agencies for the purpose of audit and evaluation of government programs; and

7. To persons in an emergency, in order to protect the health or safety of students or other persons.

All of these exceptions are permitted under FERPA. Information will be released only on the condition that the party to whom the information is released will not disclose it to subsequent parties without the written consent of the student. Furthermore, the College will maintain records of any access provided without the expressed consent of the student, and these records will be made available to the student on request.



**EXCELSIOR COLLEGE®**

7 Columbia Circle, Albany, NY 12203-5159
Phone: **518.464.8500** | Toll Free: **888.647.2388** | Fax: 518.464.8777
**WWW.EXCELSIOR.EDU**

**TO:**     Future Excelsior College Nursing Students from Vermont
**FROM:**  Excelsior College Admissions Office
**RE:**     Current Vermont State Board Status

The Vermont Board of Nursing has a stipulation for RN licensure for Excelsior graduates. Graduates are eligible to apply for licensure only by endorsement. The Vermont Board requires 480 hours of RN clinical work experience as a qualification for licensure.

As a graduate you may apply for licensure by examination and work as an RN in another U.S. jurisdiction. Or you can apply for licensure by examination in another U.S. jurisdiction and work for a federal facility in Vermont, such as a VA hospital, military hospital, or federal correctional facility. Once you can verify the 480 hours of RN clinical experience, you can apply for license by endorsement.

In order to process your undergraduate application for admission to the School of Nursing, select one of the options listed below. Then sign and return this document for processing.

---

☐  I am aware of the current policy of the Vermont Board of Nursing regarding licensure of graduates of the Excelsior College School of Nursing. **Please proceed with my application and/or enrollment.**

☐  I have decided NOT to enroll in Excelsior College at this time. **Please return my application form and fee and/or enrollment.**

Signature _____     Date _____

Print Name _____

Excelsior College ID # _____
             ID# required. It can be found at www.excelsior.edu/myexcelsior.

---

**Please return signed copy back via the Message Center.**

Other options:
**FAX:** Admissions Office, 518-464-8833, available 24 hours a day
**MAIL:** Admission Office, Excelsior College, 7 Columbia Circle, Albany, NY  12203-5159

If you have any questions, call the Admissions Office at 888-647-2388, ext. 27.



August 15, 2018

Missouri State Board of Nursing
3605 Missouri Blvd., P.O. Box 656
Jefferson City, MO 65102-0656

To Whom It May Concern:

I am writing because I learned recently that Ms. Maketa Jolly, LPN submitted applications for
RN licensure to multiple State Boards of Nursing and misrepresented herself as a graduate of
Excelsior College.  While Ms. Jolly attended Excelsior College, she is not a graduate of the
School of Nursing.  Questions concerning graduates of the Excelsior College School of Nursing
should be directed to stateboards@excelsior.edu or to Karen Fagan, Senior Director of
Admissions, Evaluation and Licensing at 518-464-8710.

Sincerely,

Mary Lee Pollard

Mary Lee Pollard, PhD, RN, CNE
Dean, School of Nursing

RECEIVED

AUG 2 0 2018

MISSOURI STATE
BOARD OF NURSING

7 Columbia Circle, Albany, NY 12203-5159  |  PHONE: 518.464.8500  |  TOLL FREE: 888.647.2388  |  FAX: 518.464.8777

# 282 Sept.

Vermont. The e-mail correspondence from Ms. Jolly also reflects communications with the Vermont BON. (Docket Entry No. 203 at p. 15). Communications regarding the Vermont BON are discussed more fully below.[5]

The undersigned counsel contacted Hermina Law Group to discuss Ms. Jolly's contacts to Excelsior seeking verification of false information to State Boards of Nursing in June 2018.[6]

In August 2018, Phyllis Mitchell ("Ms. Mitchell") the Executive Director of the Vermont Board of Nursing ("Vermont BON") contacted Excelsior and advised that Ms. Jolly had filed an application for Registered Nurse ("RN") licensure.[7] Ms. Mitchell advised Dean Mary Lee Pollard ("Dean Pollard) that Ms. Jolly indicated on her RN licensure application to the Vermont BON that she was a graduate of Excelsior. Dean Pollard contacted Ms. Mitchell to confirm that Ms. Jolly had not graduated from Excelsior College's ADN Program.

The State BON's take misrepresentations regarding educational background very seriously as there is a risk to public health. For example, in Vermont and presumably most states, it is "unprofessional conduct" for an LPN to make false statements in attempting to secure a license.[8] In this regard, the Vermont BON expressly requested that Dean Pollard file a complaint regarding Ms. Jolly.

Excelsior College was also extremely concerned to learn that Ms. Jolly would falsely represent to multiple state nursing licensing boards that she graduated from Excelsior College. The extent of Ms. Jolly's misrepresentation regarding her status as an Excelsior College graduate is unknown. Upon information and belief, Ms. Jolly also sought RN licensure in New Jersey and Colorado. Accordingly, Excelsior College requested that Ms. Jolly cease and desist from representing herself as a graduate of the ADN Program.

Based on Ms. Jolly's submission to the Court, it appears that she notified her counsel of her efforts to obtain RN licensure. Ms. Jolly also wrote that she advised counsel of her purported concerns in August 2018 (Docket No. 208 at p. 1).[9] Accordingly, Ms. Jolly's counsel has been aware of these purported claims since, at least, Summer 2018.

March 26, 2019 Release of Claims

Based on the foregoing, Ms. Jolly has no claims against Excelsior College, and the Court should not grant her request for any relief whatsoever. In addition, Ms. Jolly executed a general

*[handwritten: Jaffa ; files (pg 2) A) This scribe Hermina Law did not contract in relation to this Matter]*

---

[5] Notably absent from Ms. Jolly's submission are her alleged communications with the State of New Jersey, Board of Nursing.

[6] Juffa Dec, Exhibit "B," June 26, 2018 correspondence from Kaufman Borgeest & Ryan LLP to Hermina Law Group re: Maketa Jolly.

[7] Juffa Dec., Exhibit "C," August 10, 2018 correspondence from Excelsior Administrative Associate to the Dean and Associate Dean of School of Nursing documenting telephone call from Executive Director of the Vermont BON.

[8] See, e.g., 26 V.S.A. § 1582(a)(1).

[9] (Docket Entry No. 203 at p. 17-19) E-mail sending Excelsior State Board messages to j@herminalaw; as well as other attorneys, ssteinberg@zswlaw.com (upon information, Saul Steinberg of Zucker Steinberg & Wixted) and rich@richwestlaw.com (upon information, Richard West of The Law Office of Richard West).

KAUFMAN BORGEEST & RYAN LLP

3

5588710

*[handwritten: Jaffa esq Response to Judge Mann Relation to Chrstulaw + Excelsior Class Action lawsuit]*

Case 1:19-cv-01317-DNH-TWD    Document 2    Filed 03/21/19    Page 115 of 115

 Gmail

**Keta Jolly <keta814@gmail.com>**

---

## Excelsior College Student # 30399983

Keta Jolly ⬛⬛⬛⬛⬛⬛⬛⬛                                        Thu, Mar 20, 2014 at 6:55 PM
To: conpro@westchestergov.com

Hello,

My name is Maketa Jolly and I was a student at Excelsior College since 2009 in the Nursing Department. I am currently an LPN and some of what attracted me to this program was that it is on line and it provided autonomy for students who wanted to move up and gain their RN. On 03/01/2014 I took my FCCA course for the third time at which time Excelsior nor did the nursing staff reach out to actually advise the students. Excelsior has collected more than 15,000 dollars from me but I have received no degree. I explained to them and provided proof that when I took the test on 03/01/2014 it was flawed I even provided information from their own tech support who could not fix the problem. I was not allow to retake the test I was dismissed from the nursing program by Mary Lee Pollard and her Nursing staff. To date I have received no refund for the test or authorization to retest either. The test costs 275.00 dollars each some I took two maybe three times. This is fraudulent and misleading representation from a education institution and I respectfully seek help

Regards

Maketa Jolly