```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

MAKETA S. JOLLY,

                    Plaintiff
         -v-                                          1:19-CV-1317

EXCELSIOR COLLEGE,

                    Defendant.

--------------------------------
```

| APPEARANCES: | OF COUNSEL: |
|---|---|
| MAKETA S. JOLLY<br>Plaintiff *pro se*<br>42 Kingston Terrace<br>Aston, Pennsylvania 19014 | |
| KAUFMAN BORGEEST & RYAN, LLP<br>Attorneys for defendant<br>120 Broadway 14th Floor<br>New York, New York 10271 | LAURA B. JUFFA, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

### I.    INTRODUCTION AND BACKGROUND

Plaintiff Maketa S. Jolly ("Jolly" or "plaintiff") is an African American woman and a Licensed Practical Nurse ("LPN"). At some point during the mid-to-late 2000s, she began to consider progressing her career and looked into becoming a Registered Nurse ("RN"). Dkt. 2 ("Comp."), pp. 25, 115.[1]  In 2009, plaintiff stumbled across Excelsior College ("Excelsior" or

---

[1] Pagination corresponds with CM/ECF. The facts are taken entirely from plaintiff's complaint and any and all documents attached to it, because for the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

"defendant"), an online college that offered a program that, upon graduation, would qualify its students to sit for an examination to become RNs. *See id.*

Jolly enrolled in Excelsior's nursing program in 2009, but was ultimately dismissed without graduating on March 1, 2014 after failing a required course for the third time. Comp. 115. For her part, however, plaintiff asserts that there was a technical error in her third test and she should have been permitted to take the test a fourth time. *Id.*

Nevertheless, on March 5, 2018, absent both a degree from Excelsior and any directive as to whether she would be permitted to take the failed course again, Jolly applied to sit for the NCLEX-RN examination—apparently the required test to become an RN—in Vermont. Comp. 25, 115. As part of the test application, plaintiff was asked to enter the date she graduated from a program that would make her qualified to work as an RN. *Id.* at 25-26. Plaintiff alleges that she was attempting to apply for the examination through an alternate qualification process, and never intended to state that she had graduated from defendant's program, but Vermont's system still required her to list her graduation date. *Id.*

On March 7, 2018, Jolly received an email from Vermont's Licensing Administrator, Michelle Lavoie ("Lavoie") informing plaintiff that she had received plaintiff's college transcripts, but that her application remained incomplete. Comp. 26. After several volleys of communication back and forth, Lavoie ultimately told plaintiff that her paperwork could not be accepted and that she would need a verification of education form from Excelsior. *See* Comp. 95-99.

On July 31, 2018, an unnamed party allegedly informed New Jersey's Board of Nursing ("the Jersey board") that Jolly had attempted to receive an RN license in Vermont by misrepresenting that she had an associate degree from Excelsior's RN program. Comp. at 102. On August 15, 2018, defendant allegedly confirmed to the Jersey Board that plaintiff

had attended Excelsior's nursing program but had received no degree.  *Id.* at 102-03.  The Jersey Board brought a disciplinary action against plaintiff, and she ultimately waived her right to a hearing and accepted a five-year -suspension of her LPN license in New Jersey on December 6, 2018.[2]  *Id.* at 104.

In February of 2019, Jolly alleges that New Jersey's Lieutenant Governor's office sent her an email containing the Jersey board's formal decision and punishment.  Comp. 28.  Plaintiff does not know whether it was Vermont's Board of Nursing ("the Vermont board") or Excelsior who informed the Jersey board that she did not have the requisite degree to become an RN.  *Id.* at 28-29.  In any event, plaintiff alleges that defendant had reached out to several states' nursing boards to proactively inform them that plaintiff was misrepresenting herself as a graduate.  *Id.* at 113.

On May 21, 2019, Jolly filed the present complaint in the Eastern District of Pennsylvania against Excelsior, the Jersey board, and the Vermont board.  Dkt. 2.  On May 24, 2019, United States Magistrate Judge Joel H. Slomsky transferred the case to the Northern District of New York but dismissed plaintiff's claims against the state boards with prejudice for lack of subject matter jurisdiction.  Dkt. 5.  On May 11, 2020, defendant moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.  That motion, having been fully briefed, will now be decided on the parties' submissions without oral argument.

## II.   LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Ginsburg v. City of Ithaca*, 839 F. Supp.

---

[2] According to the Jersey board's administrative decision, attached as an exhibit to the complaint, plaintiff had erroneously received an RN license in that state and had worked for several months in that role despite being errantly licensed.  Comp. at 102--04.

3

2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540. Especially, a *pro se* plaintiff must have her submissions scrutinized with "special solicitude," and they "must be . . . interpreted to raise the strongest arguments that they suggest." *Triestman v. BOP*, 470 F.3d 471, 47475 (2d Cir. 2006) (cleaned up).

The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

### III. **DISCUSSION**

As an initial matter, Excelsior argues that Jolly's claims are barred by a settlement agreement she entered with defendant in 2019. Defendant argues that in that agreement, plaintiff ceded all claims against it accruing before the date of the release on March 26, 2019. For her part, plaintiff argues that the release should not be extended to these unrelated claims.

It may be that Excelsior is correct, and the release broadly ceded all of Jolly's rights to sue. But that question cannot be answered on a motion to dismiss, not when the release itself is not available for review. To be sure, defendant has cited to pages and paragraphs from the document, but those are of little use when the Court cannot access the actual document. After all, in citing to the release, defendant referred the Court to a docket entry in

the Eastern District of New York.  Though this means of citation is not a problem in a vacuum, in this particular case the docket entry containing the settlement agreement is sealed, and cannot be accessed through any available means other than requesting the District Court of the Eastern District of New York to unseal it.

As it stands, there are two different interpretations of the settlement release, and neither can be verified.  By extension, it would be improper to take judicial notice of the effects of a release based purely on Excelsior's word when Jolly's interpretation—as a *pro se* plaintiff—stands opposite to it, especially in the context of a Rule 12 motion.  Accordingly, the release cannot dispose of plaintiff's claims at this juncture, and review of defendant's motion must pass on to the adequacy of the complaint.[3]

Jolly's complaint can be read to assert seven claims: (I) disclosure of personal information; (II) violation of 18 U.S.C. § 242 ("§ 242"); (III) conspiracy under 42 U.S.C. § 1985 ("§ 1985"); (IV) discrimination under 42 U.S.C. § 2000e ("Title VII"); (V) Excelsior's violation of attorney-client privilege; (VI) another Title VII claim; and (VII) a defamation claim, which defendant correctly notes lies hidden in the "Analysis" section of the complaint, but which must nevertheless be considered in light of plaintiff's *pro se* status.

Jolly's Count I claim for disclosure of personal information lists several potential statutory and regulatory bases, spanning federal and state law.  First, plaintiff references 32 C.F.R. § 505.7 ("§ 505.7"). This regulation forms part of the Army Privacy Act Program, which regulates the disclosure of personal information stored in the Army's system of records to other agencies and third parties.  *Thundathil v. Lynch*, 2016 WL 5485123, at *7 (W.D. Okla.

---

[3] Plaintiff argues that because her claims against defendant were not dismissed when the case was transferred, defendant's motion is improper.  Although she is correct that dismissal is one potential remedy for a complaint brought in an improper venue, and also that Magistrate Judge Slomsky dismissed only her claims against the boards and declined to dismiss her claims against defendant upon his *sua sponte* review, neither fact amounts to an endorsement of her remaining claims.  Similarly, neither fact precludes defendant's Rule 12(b)(6) motion.

Sept. 29, 2016). Because plaintiff does not allege at any point in her complaint that the records defendant apparently disclosed were stored in an Army database, plaintiff cannot rely on § 505.7 to support her claim.

Second, Jolly refers to Vermont's Public Records, Privacy, and Electronic Access Handbook ("the Handbook"). Much as the name suggests, the Handbook plaintiff refers to is simply a reference guide to Vermont's policies regarding the listed topics, among them the privacy of public records. There is therefore similarly no authority stemming from the Handbook to support a viable action against Excelsior. Moreover, the allegations rooted in the Handbook are aimed exclusively at former defendant the Vermont board, without reference to the only remaining defendant. Thus, the Handbook cannot support plaintiff's claim.

Third, Jolly relies on Vermont's Public Records Law, 1 V.S.A. §§ 315-20. Her reliance is, once again, misplaced. The only portion of that statute which even arguably creates an individual right of the sort plaintiff alleges is 1 V.S.A. § 317a(b), which states that "[a] custodian of public records shall not destroy, give away, sell, discard, or damage any record or records in his or her charge[.]" Even assuming, but of course not deciding, that this language afforded plaintiff an actionable right, she could not assert that right against Excelsior, who can hardly be said to be a custodian of public records under the authority of Vermont's state legislature.

Fourth and finally, Jolly refers in her complaint to the Privacy Act of 1974 ("the Privacy Act"), 5 U.S.C. § 552a. Even that argument is unavailing, however, because the Second Circuit has firmly held that the Privacy Act affords no such private right of action against anyone other than a federal agency. *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005). Accordingly, plaintiff has not provided any viable basis for a claim of disclosure of personal

information, and that claim must be dismissed.  Moreover, even giving due consideration to plaintiff's *pro se* status, no amount of amending can fix a claim with no substantive basis in law.  Accordingly, permitting plaintiff to amend would be futile, and plaintiff's Count I disclosure of personal information claim must be dismissed with prejudice.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Count II alleges that Excelsior violated § 242.  The problem with that allegation, however, is that § 242 is a federal criminal statute, which also does not provide plaintiff a private cause of action.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994).  Accordingly, Jolly's Count II claim for violation of § 242 must also be dismissed, and because the lack of any private cause of action would render amending that claim futile, that dismissal must be with prejudice.

Count III of Jolly's complaint alleges that Excelsior participated in a conspiracy to deprive her of her constitutional rights in violation of § 1985.  A conspiracy claim under § 1985 requires a plaintiff to allege four elements:  (1) a conspiracy; (2) aimed at directly or indirectly depriving a person or class of persons of "the equal protection of the laws, or of equal privileges and immunities under the laws"; (3) an act in furtherance of that conspiracy; and (4) a resulting injury to person or property, or else the deprivation of a right or privilege of a United States citizen.  *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015).  The plaintiff must also plausibly allege that the conspiracy is "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus . . . ."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007).

Jolly alleges that Excelsior conspired with the Vermont and Jersey boards to smear her reputation and prevent her from becoming an RN because she is an African American woman.  However, plaintiff's attempts to plausibly allege a racial or otherwise invidious

component to defendant's conduct fall well short of sufficiency.  Plaintiff makes three allegations touching on race:  (1) she is an African American woman; (2) the Vermont board's Program Manager for Nursing Assistants, rather than a program manager for a full nursing program, called plaintiff on the phone to discuss her concerns with the NCLEX-RN examination; and (3) defendant's describing plaintiff as ineligible to sit for the NCLEX-RN examination.  Comp. at 25, 50, 55.

Jolly essentially argues that the Vermont board had the wrong department call her because it assumed that an African American woman would not be a nurse, but would instead be a nurse's assistant.  Similarly, plaintiff's being labelled ineligible to sit for the NCLEX-RN examination is, she argues, a prejudicial denial of the opportunity for education and advancement for African Americans.  The road block that plaintiff runs into, however, is that there is an utter absence of any factual basis to tie race to either action.

Jolly may genuinely believe that her receiving a call from the wrong department and being labelled ineligible were racially motivated slights, but her own beliefs do not provide a factual basis sufficient to render those allegations plausible.  Plaintiff only assumes that she received the errant phone call because she is an African American; she does not allege that the caller made reference to her race in any way.  Nor does she refer to any portion of the call itself that led her to that conclusion.  The same is only more true for her being labelled ineligible; there is nothing at all to suggest that her race played any part in the label.

Jolly's bald assumptions are conclusory by definition, and cannot sufficiently support her allegation to overcome Excelsior's motion to dismiss.  *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (noting that assertions that lack any factual foundation are conclusory and insufficient to defeat motion to dismiss).  Furthermore, even if the Vermont board's conduct in having the allegedly wrong department head call plaintiff was racially

8

motivated, the complaint provides no factual allegations to show any concerted effort on defendant's part to join in that allegedly discriminatory conduct.

Without any concrete factual allegations that point to race as a motivating factor in Excelsior's actions in informing various nursing boards that Jolly did not complete its RN program, her Count III § 1985 claim must be dismissed. *Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 299-300 (S.D.N.Y. 2019) (dismissing § 1985 claim for inadequate factual matter tying race to acts taken in furtherance of alleged conspiracy).

Most fatal of all, however, is that Jolly cannot show that Excelsior's conduct at any point deprived her of a right or privilege. Plaintiff argues that she was denied the privilege of becoming an RN, and that is certainly true. But she cannot contend that she was entitled to that privilege when her complaint appends the Jersey board's disciplinary finding that she was never qualified to become an RN and that her licensure in that state was erroneous.

Moreover, at the risk of overplaying a theme, Jolly did not contest that finding and waived her right to a hearing on that score. Accordingly, plaintiff cannot allege any set of facts under which Excelsior denied her a privilege that she was never entitled to in the first place. Accordingly, her § 1985 claim must be dismissed, and given the futility of allowing amendment when plaintiff cannot hope to allege any deprivation of a privilege under these facts, that dismissal must be with prejudice.

Counts IV and VI of Jolly's complaint both allege discrimination in violation of Title VII. As Excelsior correctly notes, "the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). Because there are no allegations that plaintiff was ever defendant's employee, her Title VII claims must both be dismissed. *Id.* Moreover, because her allegations rely on the school-student dynamic, and not any employment relationship, no amendment to these

9

claims would save them, and thus amendment would be futile. Accordingly, plaintiff's Title VII claims must be dismissed with prejudice.

As near as the Court can guess, Jolly's Count V attorney-client privilege claim appears to argue that Excelsior improperly disclosed information protected by that privilege. It must of course be noted at the outset that the privilege is not called school-student, and by extension it can be safely assumed that defendant did not owe a duty to protect plaintiff's information as her attorney. As a result, the question becomes whether plaintiff may state a claim against defendant for, she alleges, publishing materials which were protected by an attorney-client privilege to her detriment.

There can be no doubt that, even assuming that Excelsior did precisely that, New York does not recognize a tort against a third party to the attorney-client privilege who, having intruded on privileged information, then broadcasts that information. *Madden v. Creative Servs., Inc.*, 51 F.3d 11, 12-13 (2d Cir. 1995).

It is possible that Pennsylvania law, the state of Jolly's residence, applies to this claim instead. The vast reaches of case law remain silent as to whether that state's law would recognize a tort for a third-party breach of attorney-client privilege. As a result, it would make little sense to create such a tort out of whole cloth without any supporting Pennsylvania authority in the face of New York's compelling reasons not to create such a tort resting on judicial restraint. *Madden v. Creative Servs., Inc.*, 646 N.E.2d 780, 783-85 (N.Y. 1995) (answering Second Circuit's certified question as to whether New York would recognize tort for intruder's breach of attorney-client privilege in the negative because possibility of unforeseen negative consequences loomed too large).

Accordingly, there is no available cause of action on these facts under either potentially applicable body of state common law, and Jolly's claim for breach of attorney-

10

client privilege must be dismissed. Once again, the absence of a source of law sufficient to support plaintiff's claim would render futile any attempt to amend her complaint to salvage this claim. This claim must therefore also be dismissed with prejudice.

Finally, as to Count VII, Jolly has used some language in her complaint to suggest that she raises a claim of defamation against Excelsior. In deference to her *pro se* status, plaintiff's complaint will be read to assert that claim.

Under New York law, defamation is "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of h[er] in the minds of right-thinking persons, and to deprive h[er] of their friendly intercourse in society." *Foster v. Churchill*, 665 N.E.2d 153, 157 (N.Y. 1996).

Under Pennsylvania law, by contrast, a plaintiff must prove seven elements: (1) a defamatory communication; (2) published by the defendant; (3) the communication applies to the plaintiff; (4) the communication's recipient understands it to have defamatory meaning; (5) the recipient also understands it to be about the plaintiff; (6) special harm to the plaintiff; and (7) the abuse of a conditionally privileged occasion. *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 903 (Pa. 2007). However, a defendant may rebut a claim of defamation by proving: (1) the defamatory communication was true; (2) the publication was privileged; or (3) the allegedly defamatory comment dealt with a matter of public concern. *Id.*

Suffice to say, under either state's defamation scheme, a defamation claim must be dismissed if it is clear from the face of the complaint that the allegedly defamatory statement was true. *See, e.g.*, *Budbri LP v. Wilmington Tr. FSB*, 2012 WL 13015114, at *1 n.1 (E.D. Pa. Oct. 5, 2012) (dismissing defamation claim under Pennsylvania law because allegedly defamatory comment was true based on face of complaint).

11

Jolly's allegations are essentially that Excelsior defamed her by falsely informing nursing boards across the nation that she had not completed its RN program, despite her telling varied nursing boards that the converse was true. However, at no point in the complaint does she allege that she actually graduated from defendant's RN program. To be sure, in places she argues that she is eligible to become an RN, and that she has completed an "RN Theory" program, but she also openly admits in her complaint that she never graduated from defendant's program. Comp. 31; *see* Comp. 60-61 (plaintiff noting that she "did not graduate" from defendant, but "did graduate from the [other] collegiate institutions").

In fact, then excerpt of Jolly's disciplinary hearing before the Jersey board, at which she, once again, accepted a five-year suspension of her LPN license for misrepresenting that she had graduated from Excelsior emphatically establishes that she did not, in fact, graduate. Comp. 102-04. Accordingly, plaintiff cannot hope to plausibly establish a claim of defamation when her complaint on several occasions establishes that the only harmful statement she alleges defendant made is uncontrovertibly true. Once again, she could not amend her complaint to cure this claim without flatly controverting several allegations in her initial complaint, and thus amending the complaint would be futile. As a result, plaintiff's defamation claim, to whatever extent she makes one, must be dismissed with prejudice.[4]

## IV.  CONCLUSION

In sum and substance, Jolly claims that she was improperly denied a chance to become an RN because Vermont's application system for the NCLEX-RN examination insufficiently accommodated applicants seeking to pursue alternative paths to become one

---

[4] To whatever extent the complaint could be read to assert a general claim of civil conspiracy, that claim must also be dismissed. Neither New York nor Pennsylvania recognize an independent tort for civil conspiracy. *McCall v. Chesapeake Energy Corp.*, 509 F. App'x 62, 65 (2d Cir. 2013) (summary order) (noting that New York does not recognize a common law tort for civil conspiracy in the absence of an underlying tort for defendant to conspire to achieve); *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 512 (E.D. Pa. 2014) (holding same for Pennsylvania). Therefore, because none of plaintiff's other claims survive, there is nothing remaining for plaintiff to allege that defendant conspired to do, and any civil conspiracy claim must also be dismissed.

12

other than graduating from a particular program. That may very well be true. But that does not change that her allegations against Excelsior amount to little more than its telling the truth that she never graduated from its version of that program. In the absence of any allegations more egregious than defendant's honestly defending its reputation, plaintiff's complaint must be dismissed.

    Therefore, it is

    ORDERED THAT

    1. Defendant's motion to dismiss under Rule 12(b)(6) is GRANTED; and

    2. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

    The Clerk of Court is directed to enter judgment accordingly and close the case.

    IT IS SO ORDERED.

Dated: June 12, 2020
       Utica, New York.

David N. Hurd
U.S. District Judge